IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| THOMAS RICHARDS ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 5:25-00089 |
| ) | |
| ROBERT KIRKMAN, et al. ) | |
| ) | |
| Defendants ) | |

**DEFENDANT LCG ENTERTAINMENT, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant LCG Entertainment, Inc. ("LCG") submits this Memorandum in Support of its Motion to Dismiss the Complaint (ECF No. 1) of Plaintiff Thomas Richards ("Plaintiff"), and all claims asserted therein against LCG, for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff has sued LCG, a Delaware corporation with its principal place of business in California, in the Western District of Virginia. Under the most generous reading of the Complaint, Plaintiff asserts that LCG acquired the assets of Telltale Games, Inc. ("Telltale"), which developed and published The Walking Dead video game series featuring a fictional character named Thomas Richards who was convicted of murdering his wife. Despite the Walking Dead being a fictious series about a zombie apocalypse, and at least 33,487 people in the United States having the same name, Plaintiff claims this character was intentionally named after him to portray him as a "violent, murderous psychopath" and detract from his "legitimate religious work." Plaintiff asserts claims for defamation, unauthorized use of his name under Va. Code § 8.01-40, and unfair competition.

The Court should dismiss Plaintiff's Complaint, and all claims asserted therein against LCG, for two reasons: (1) the Court lacks personal jurisdiction over LCG; and (2) Plaintiff has failed to state a claim upon which relief can be granted against LCG.

First, this Court lacks general and specific personal jurisdiction over LCG. There is no general jurisdiction because LCG is not "at home" in the Commonwealth of Virginia. In fact, Plaintiff's Complaint identifies *California* as the state where LCG is located. Additionally, this Court lacks specific jurisdiction over LCG because there is no connection between any of LCG's alleged conduct and the Commonwealth of Virginia. Plaintiff does not allege that *any* conduct giving rise to his claims by LCG took place in or was directed at Virginia.

Second, the Court should dismiss the Complaint because Plaintiff has failed to state a claim upon which relief can be granted against LCG. LCG is not a proper party defendant. LCG has had no role or involvement in or affiliation with the development, publishing or distribution of The Walking Dead video games. LCG did not even exist when the Walking Dead video game was developed and published in 2012. As its Delaware Certificate of Good Standing confirms, LCG was not formed until 6 years later on December 27, 2018. While LCG did purchase certain assets from Telltale's Assignment for the Benefit of Creditors process, the Walking Dead video games were not among them. As the Asset Purchase Agreement between Telltale and LCG dated May 21, 2019 confirms, the Walking Dead video games were specifically excluded from the purchased assets and never acquired by LCG. Thus, according to his own allegations, Plaintiff has sued the wrong party and failed to state a claim against LCG. Finally, Plaintiff's claims are implausible, factually deficient, and legally insufficient. There is nothing to plausibly suggest that anyone intentionally named a Walking Dead character after Plaintiff, much less that the audience would believe it to be about him or reflective of his true character.

## **FACTUAL BACKGROUND**

Only the well-pleaded factual allegations of the Complaint must be accepted as true for purposes of LCG's Federal Rule of Civil Procedure 12(b)(2) and (b)(6) arguments. *See Mullinex v. John Crane, Inc.*, 606 F. Supp. 3d 289, 292-93 (E.D. Va. 2022); *Johnson v. Ebenezer Baptist Church*, 2013 WL 12097815, at *2 (E.D. Va. 2013).

In 2012, Telltale developed and published The Walking Dead video game series featuring a fictional character named Thomas Richards who was convicted of murdering his wife. (ECF No. 1 ¶¶ 17, 85 fn. 54). Despite the Walking Dead being a fictious series about a zombie apocalypse, and at least 33,487 people in the United States having the same name (www.howmanyofme.com), Plaintiff claims this character was intentionally named after him to portray him as a "violent, murderous psychopath" and detract from his "legitimate religious work." (Id. ¶¶ 1, C 6). Telltale ceased operations in 2018. (Id. ¶ 16). LCG was formed on December 27, 2018. (Id. ¶¶ 7, 17). Thereafter, on May 21, 2019, LCG acquired certain of Telltale's assets. (Id. ¶ 16). LCG continues to do business as Telltale. (Id).

LCG has had no role or involvement in or affiliation with the development, publishing or distribution of The Walking Dead video games. LCG did not even exist when the Walking Dead video game was developed and published in 2012. (Id. ¶¶ 7, 17, 85 fn. 54). As its Delaware Certificate of Good Standing which is a public record available on the Delaware Division of Corporations website attached hereto as **Exhibit 1** confirms, LCG was not formed until 6 years later on December 27, 2018. *See Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and it is capable of accurate and ready determination").

While LCG did purchase certain assets from Telltale's Assignment for the Benefit of Creditors process, the Walking Dead video games were not among them. As the Asset Purchase Agreement between Telltale and LCG dated May 21, 2019 which is incorporated by reference in Plaintiff's Complaint (ECF No. 1 ¶ 16) and will be provided to the Court under seal for review confirms, the Walking Dead video games were specifically excluded from the purchased assets and never acquired by LCG. *See Trauernicht v. Genworth Fin. Inc.*, 2023 WL 5961651, at *6 (E.D. Va. 2023) (Courts may consider "documents attached or incorporated into the complaint").

Exhibit 1.3.1, Table 1 of the Asset Purchase Agreement specifically identifies the Purchased Assets including all Software and Technology acquired by LCG. The Walking Dead video games are not listed as Purchased Assets.

Exhibit 1.3.7, Table 7.1. of the Asset Purchase Agreement identifies certain "Excluded Games" which are specifically excluded from the Purchased Assets. The Walking Dead games are specifically identified as Excluded Games that were not acquired by LCG. The relevant excerpt confirming the exclusion of the Walking Dead games is provided below.

**Exhibit 1.3.7**
**Excluded Assets**

1. **"Excluded Games"** mean the video games on all platforms and operating systems set forth in **Table 7.1** below.

**Table 7.1.**

| Excluded Games (Excluded Games include all versions, episodes and seasons of each particular Excluded Game) | Description |
|---|---|
| ■ | ■ |
| ■ | |
| ■ | ■ |
| ■ | ■ |
| ■ | |
| The Walking Dead | All seasons, titles, and episodes of The Walking Dead series of games, and all related content and downloadable content. For avoidance of doubt, the Walking Dead Royalty Payments are excepted as provided in Exhibit 1.3.6. |
| ■ | ■ |

Plaintiff does not identify LCG as a party in the opening paragraph of his Complaint. (ECF No. 1 p. 2). Plaintiff only mentions LCG three times in his Complaint. (Id. ¶¶ 7, 16, 17). Despite making generic allegations against "Defendants" collectively, Plaintiff fails to identify anything that LCG did or failed to do that might give rise to liability, establish personal jurisdiction or make LCG a proper party defendant.

As Plaintiff acknowledges, LCG is a Delaware corporation with a principal place of business in California. (Id. ¶¶ 7, 17). Plaintiff fails to allege that LCG has any connection with Virginia, has any business presence in Virginia, has engaged in any activities in Virginia or has directed any activities to Virginia.

Plaintiff does not specifically allege that LCG was involved in the development, publishing or distribution of The Walking Dead video games. There is good reason for this: LCG did not even exist and had no such involvement. (Id. ¶¶ 7, 17, 85 fn. 54). Any such allegation is contradicted by LCG's Certificate of Good Standing which confirms that LCG did not even exist when the Walking Dead video game was developed and published in 2012.

Plaintiff likewise does not specifically allege that the Walking Dead video games were among the assets that LCG purchased from Telltale. There is good reason for this too: LCG never purchased or acquired the Walking Dead video games. Any such allegation is contradicted by the Asset Purchase Agreement, which confirms that the Walking Dead video games were specifically excluded from the purchased assets and never acquired by LCG. Thus, according to his own allegations, Plaintiff has sued the wrong party and failed to state a claim against LCG.

Finally, as the Declaration of Dan Irish, CFO of LCG, attached hereto as **Exhibit 2** confirms, LCG has had no role or involvement in or affiliation with the development, publishing or distribution of The Walking Dead video games. LCG did not even exist when the Walking

Dead video game was developed and published in 2012. LCG was not formed until 6 years later on December 27, 2018. LCG never purchased or acquired the Walking Dead video games from Telltale. The Walking Dead video games were specifically excluded from the purchased assets and never acquired by LCG under the Asset Purchase Agreement. LCG has done nothing with respect to The Walking Dead or its comic books, video games, and other media, and knows nothing about its fictional character named Thomas Richards or how, when, where, why or by whom his name was chosen. LCG is located in California. LCG lacks any connection with Virginia and has not directed its activities to Virginia. LCG has no offices, bank accounts, employees, agents or representatives in Virginia, does not own any property in Virginia, has not registered to do business in Virginia, has not engaged in long-term business in Virginia, and has not performed any contractual duties in Virginia. LCG has no physical presence in the state of Virginia, does not own or operate any facilities in the state of Virginia, and owns no real property in the state of Virginia. Declaration of Dan Irish ¶¶ 1-32.

## LEGAL STANDARD

Courts must dismiss complaints if they lack personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Under Rule 12(b)(2), "the jurisdictional question is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Hassan v. Barzani*, 674 F. Supp. 3d 282, 290 (E.D. Va. 2023). Courts dismiss cases "for lack of personal jurisdiction if the plaintiff has failed to make a *prima facie* showing" of personal jurisdiction. *Medmarc Cas. Ins. Co. v. GD Grp. USA Co.*, 669 F. Supp. 3d 555, 560 (E.D. Va. 2023). To satisfy this *prima facie* showing, a plaintiff must allege sufficient "facts to show that" the defendant is subject to the Court's personal jurisdiction. *See Johnson*, 2013 WL 12097815, at *2. The "court must view all relevant allegations in the light most favorable to

the plaintiff and draw all reasonable inferences for the existence of jurisdiction." *Id.* Only if the plaintiff makes a *prima facie* showing must "the defendant ... present a compelling case that the presence of some other considerations would render jurisdiction so unreasonable ... as to offend traditional notions of fair play and substantial justice." *Medmarc*, 669 F. Supp. 3d at 560-6.

Courts must also dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must incorporate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "entails more than a mere possibility that a defendant has acted unlawfully." *Mullinex*, 606 F. Supp. 3d at 293. Instead, a claim is facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*

## ANALYSIS

**1. The Court Lacks Personal Jurisdiction Over LCG.**

The Court should dismiss Plaintiff's Complaint because it lacks personal jurisdiction over LCG. A plaintiff bears the burden to allege and ultimately prove the grounds for personal jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because Virginia's long-arm statute "extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). To demonstrate that the exercise of jurisdiction is consistent with the Constitution, Plaintiff must establish that LCG has sufficient "minimum contacts" with Virginia "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under the Due Process Clause, a court can exercise jurisdiction based on either "general or all-purpose jurisdiction" or "specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). This Court may not exercise personal jurisdiction under either theory.

### a. There Is No General Jurisdiction

The Supreme Court recently reaffirmed that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For businesses and corporate entities, the "paradigm forum for the exercise of general jurisdiction" is one "equivalent" to an individual's "domicile," in which the corporation can be "fairly regarded as at home." *Goodyear*, 564 U.S. at 924. In nearly all cases, that means either the "place of incorporation" or the "principal place of business." *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402 (2017); *Daimler*, 571 U.S. 117; *Goodyear*, 564 U.S. 915; *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 133 (4th Cir. 2020) ("[T]he [Supreme] Court [has] held that a corporation may be fairly regarded as at home in the forum where it is incorporated and the forum where it has its principal place of business.") (citing *Daimler*, 571 U.S. at 137). An individual is "at home" in their domicile. *Goodyear*, 564 U.S. at 925; *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

Plaintiff's Complaint has not met the burden of establishing that LCG is "at home" in Virginia. Plaintiff admits that LCG is a Delaware corporation with a principal place of business in California. (ECF No. 1 ¶¶ 7, 17). Plaintiff has not alleged (nor can he) that LCG is incorporated or has its principal place of business in Virginia. The only jurisdictional facts pleaded by Plaintiff identify ***California*** as the state where LCG is at home. (Id. ¶¶ 16, 17).

Even if Plaintiff were to establish that LCG carries on some level of business in Virginia, that fact is insufficient for this Court to exercise personal jurisdiction. The Supreme Court has continuously emphasized that merely carrying on business activities in a state—even "a substantial, continuous, and systematic course of business"—is not a basis for general jurisdiction. *Daimler*, 571 U.S. at 138. In *Daimler*, the fact that a car company's wholly owned subsidiary operated "multiple California-based facilities" and was "the largest supplier of luxury vehicles to the California market" was not sufficient for the exercise of general jurisdiction there. *Id.* at 123; See also *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402 (2017) (finding no personal jurisdiction despite operating more than 2,000 miles of track and employing more than 2,000 people); *PBM Capital Inv., LLC v. Gen. Elec. Co.*, at *10 (W.D. Va. 2016) (holding that a defendant maintaining multiple facilities in Virginia, employing hundreds of employees, was not subject to general jurisdiction because it had a foreign principal place of business and state of incorporation). This Court therefore lacks general jurisdiction over the LCG.

### b. There Is No Specific Personal Jurisdiction

Plaintiff also cannot establish any basis for this Court to exercise specific jurisdiction over LCG. Specific jurisdiction exists when the suit arises out of or is related to LCG's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). In *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), the Supreme Court explained what is necessary for the exercise of specific personal jurisdiction:

> In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] ***activity or occurrence that takes place in the forum State***. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

*Id.* at 264 (emphasis added). The Fourth Circuit has held that specific jurisdiction is proper only where "(1) defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) the plaintiffs' claims arise out of those activities directed at the State; and (3) the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002); *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278– 79 (4th Cir. 2009) (all elements are required).

In applying this test, courts consider, among other things: (1) whether LCG maintains offices or agent in the forum state; (2) whether LCG owns property in the forum state; (3) whether LCG reached into the forum state to solicit business; (4) whether LCG deliberately engaged in significant or long-term business activities in the state; (5) whether LCG made in-person contact with the resident of the forum state regarding the business relationship; (6) the nature, quality, and extent of the parties' communications about the business being transacted; and (7) whether the performance of contractual duties was to occur within the forum. *Id.*

Here, Plaintiff has not pleaded any of these facts as to LCG. There are no allegations that LCG has offices or agents in Virginia, own property in Virginia, reached into Virginia, engaged in long-term business in Virginia, made any in-person contact with a resident of Virginia, communicated with any party in Virginia, or performed any contractual duties in Virginia.

Instead, Plaintiff generically alleges in collective and conclusory fashion that: "Personal jurisdiction over Defendants is proper because they have purposefully directed their activities at the forum state and have established minimum contacts such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Defendants' products, including comic books, video games, and other media containing the defamatory content, are distributed and sold throughout Virginia." (ECF No. 1 ¶ 8).

This is woefully insufficient to establish personal jurisdiction. *See Coffin v. TGM Assocs. LP*, 2021 WL 1238560, at *4 (D. Md. 2021) (declining to exercise personal jurisdiction and specifying that "conclusory allegations" should be "set[] aside ... in determining whether specific personal jurisdiction exists"). This is especially true when the "conclusory allegations" pertain to multiple defendants. *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013) (declining to exercise personal jurisdiction where the plaintiff's personal jurisdiction allegations were "[b]lanket conclusory allegations" that, as here, "group[] the defendants together and is not specific about the activities or actions of any particular defendant").

Despite making generic allegations against "Defendants" collectively, Plaintiff fails to identify anything that LCG did or failed to do that might establish personal jurisdiction. Plaintiff does not allege any acts or omissions of LCG occurring in Virginia. There are also no allegations that LCG regularly conducted or solicited business in, engaged in any persistent course of conduct in, or derived substantial revenue from goods or services rendered in Virginia. *See Waller v. Nelson*, 2023 WL 4106250, at *9 (W.D. Va. 2023) (dismissing complaint for lack of personal jurisdiction under Virginia long-arm statute where complaint was "devoid of any factual allegations specific to the defendants showing that they ever conducted *any* business in Virginia aside from" the transaction at issue and there were no "credible allegations that the defendants solicited business within Virginia").

Additionally, "[e]ven if Virginia's long-arm statute were sufficient to reach" LCG, "exercising jurisdiction over LCG would be improper because the long-arm statute's reach in this situation would exceed its constitutional grasp." *Hassan*, 674 F. Supp. 3d at 291. The Constitution requires Plaintiff to show that "LCG purposefully availed itself of the privilege of conducting activities in the State." *Consulting Eng'rs Corp.*, 561 F.3d at 278. As discussed, Plaintiff did not allege that LCG took or failed to take any action in Virginia, let alone "purposefully availed

itself" of any forum benefits. *See Hassan*, 674 F. Supp. 3d at 294 (declining to exercise specific jurisdiction where the plaintiff failed to plead facts sufficient to show purposeful availment).

Plaintiff has failed to plead the other two requisite elements for specific jurisdiction. Plaintiff's claims against LCG are not alleged to have arisen from LCG's contacts with Virginia. *See Consulting Eng'rs*, 561 F.3d at 278 (noting that "the plaintiffs' claims [must] arise out of those activities directed at the State"). Plaintiff has not alleged that exercising personal jurisdiction over LCG, despite the lack of any factual allegations connecting LCG to Virginia, would be reasonable. *See id.* (noting that the "exercise of personally jurisdiction [must] be constitutionally reasonable").

Any effort by Plaintiff to establish specific jurisdiction over LCG would falter at the outset because his claims do not arise out of any activity by LCG that takes place in or otherwise targets Virginia. Aside from identifying Plaintiff's residency, the Complaint does not mention Virginia. Without any connection between LCG's alleged conduct and Virginia, "specific jurisdiction is lacking regardless of the extent of [its] unconnected activities in the State." *Bristol-Myers Squibb*, 582 U.S. at 264; *see also Levi v. Twentieth Century Fox Film Corp.*, 2017 U.S. Dist. LEXIS 49773, at *14-16 (E.D. Va. 2017) (dismissing complaint against creators and executive producers of nationally broadcast television drama because plaintiff - a Virginia resident - did not allege any facts showing that LCG had availed itself of conducting any activities here).

In sum, there is no connection between Virginia, LCG or any of Plaintiff's claims. This Court lacks both general and specific jurisdiction and should dismiss the Complaint on those grounds. Because dismissal of LCG "is required under Rule 12(b)(2) for lack of personal jurisdiction, it is unnecessary to reach or decide" any Rule 12(b)(6) arguments concerning LCG. *Id.* at 296. Even so, Plaintiff fails to state a claim against LCG as discussed below.

### 2. Plaintiff Fails to State a Claim Against LCG.

In the alternative, the Court should dismiss Plaintiff's Complaint because he has failed to state a claim upon which relief can be granted against LCG. Plaintiff purports to assert claims for defamation, unauthorized use of his name under Virginia Code § 8.01-40, and unfair competition based on the development, publication and distribution of The Walking Dead comic books, video games and other media featuring a fictional character named Thomas Richards who was convicted of murdering his wife. Despite the Walking Dead being a fictious series about a zombie apocalypse, and at least 33,487 people in the United States having the same name (www.howmanyofme.com), Plaintiff claims this character was intentionally named after him to portray him as a "violent, murderous psychopath" and detract from his "legitimate religious work." (ECF No. 1 ¶¶ 1, C 6). For the reasons further argued by other Defendants which are incorporated herein by reference, Plaintiff's claims are implausible, factually deficient, and legally insufficient. Even assuming *arguendo* the viability Plaintiff's claims, LCG still must be dismissed from this action because LCG is not a proper party defendant.

LCG has had no role or involvement in or affiliation with the development, publishing or distribution of The Walking Dead video games. LCG did not even exist when the Walking Dead video game was developed and published in 2012. As its Delaware Certificate of Good Standing confirms, LCG was not formed until 6 years later on December 27, 2018. While LCG did purchase certain assets from Telltale's Assignment for the Benefit of Creditors process, the Walking Dead video games were not among them. As the Asset Purchase Agreement between Telltale and LCG dated May 21, 2019 confirms, the Walking Dead video games were specifically excluded from the purchased assets and never acquired by LCG. Thus, according to his own allegations, Plaintiff has sued the wrong party and failed to state a claim against LCG.

## CONCLUSION

For the foregoing reasons, LCG respectfully asks the Court to dismiss Plaintiff's Complaint, and all claims asserted therein against LCG, for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and order Plaintiff to reimburse LCG's attorneys' fees, costs and expenses incurred in this action.

Dated: October 31, 2025              Respectfully submitted,

                                     LCG Entertainment, Inc.

                                     By: /s/ Joshua F. P. Long            .
                                             Of Counsel

Joshua F. P. Long (VSB #65684)
Woods Rogers Vandeventer Black
P.O. Box 14125
10 South Jefferson Street, Suite 1800
Roanoke, VA  24038-4125
Telephone: (540) 983-7600
Facsimile: (540) 983-7711
Josh.long@woodsrogers.com

    Counsel for Defendant LCG Entertainment, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record

                                      /s/ Joshua F. P. Long            .

\

4920-1023-2430, v. 1