**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Harrisonburg Division)**

THOMAS RICHARDS,

    *Plaintiff*,

    v.

ROBERT KIRKMAN, *et al.*,

    *Defendants*.

Civil Action No. 25-00089-JHY-JCH

Hon. Jasmine H. Yoon

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Patrick J. Curran, Jr. (VSB #86144)
Alison Schary (*admission forthcoming*)
Nimra H. Azmi (*pro hac vice*)
Davis Wright Tremaine LLP
1301 K Street NW
Suite 500 East
Washington, D.C. 20005
(202) 973-4200
patcurran@dwt.com
alisonschary@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendants Robert Kirkman,*
*Skybound, LLC, and Scopely Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.    The Parties ............................................................................................................ 2

    B.    Thomas Richards Is a Fictional Character in *The Walking Dead* Comic Series and Mobile Game ...................................................................................................... 3

    C.    The Instant Lawsuit .............................................................................................. 4

ARGUMENT ...................................................................................................................... 4

    A.    All of Plaintiff's Claims Are Time-Barred ........................................................ 5

    B.    Plaintiff Cannot State Any Claim Because the Fictional *The Walking Dead* Character Does Not Depict Him .......................................................................... 8

    C.    Each of Plaintiff's Claims Fails on Independent Grounds.................................. 12

        1.    Plaintiff Fails to Plead Any Defamatory Statements or Implications (Count I)................................................................................................ 12

        2.    Virginia's Commercial Misappropriation Statute Does Not Apply to a Fictional Character in *The Walking Dead*.................................................. 14

        3.    Plaintiff Fails to Plead Unfair Competition (Count III).......................... 17

CONCLUSION.................................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilar v. Universal City Studios, Inc.*,
219 Cal. Rptr. 891–92 (Cal. Ct. App. 1985) ...........................................................................10

*Allen v. Gordon*,
446 N.Y.S.2d 48 (N.Y. App. Div. 1982), *aff'd*, 56 N.Y.2d 780 (1982) ...................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................4, 5, 12

*Brackney-Wheelock v. City of Charlottesville*,
652 F. Supp. 3d 603 (W.D. Va. 2023), *appeal dismissed*, No. 23-1129, 2024 WL 5360949
(4th Cir. Dec. 30, 2024) ...........................................................................................................12

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ..................................................................................................................16

*BYD Co. Ltd. v. All. for Am. Mfg.*,
554 F. Supp. 3d 1 (D.D.C. 2021), *aff'd*, No. 21-7099, 2022 WL 1463866 (D.C. Cir. May 10,
2022) ..........................................................................................................................................6

*Collier v. Murphy*,
No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) .................................................11

*Costanza v. Seinfeld*,
693 N.Y.S.2d 897 (N.Y. Sup. Ct. 1999), *aff'd as modified*, 719 N.Y.S.2d 29 (N.Y. Sup. Ct.
2001) ....................................................................................................................................9, 16

*Davis v. Roessler*,
No. 1:20-cv-992, 2022 WL 195496 (E.D. Va. Jan. 21, 2022) .................................................7

*DeClemente v. Columbia Pictures Indus., Inc.*,
860 F. Supp. 30 (E.D.N.Y. 1994) ............................................................................................9

*Doe v. Aylo Glob. Ent. Inc.*,
No. CV 23-07488, 2024 WL 4599539 (C.D. Cal. June 24, 2024) ...........................................6

*Duncan v. Universal Music Grp., Inc.*,
No. 11-CV-5654, 2012 WL 1965398 (E.D.N.Y. May 31, 2012) ............................................11

*Elamon v. Red Robin Int'l, Inc.*,
   No. 2:06cv202, 2006 WL 2850644 (E.D. Va. Sept. 29, 2006) ................................................13

*Eramo v. Rolling Stone LLC*,
   No. 3:15-CV-00023, 2016 WL 6462187 ................................................................................13

*Fairfax v. CBS Broadcasting Inc.*,
   534 F. Supp. 3d 581 (E.D. Va. 2020), *aff'd*, 2 F. 4th 286 (4th Cir. 2021) .............................13

*Finger v. Omni Publ'ns Int'l, Ltd.*,
   566 N.E.2d 141 (N.Y. 1990) ...................................................................................................15

*Fischer v. Forrest*,
   2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) ..........................................................................6

*Gravano v. Take-Two Interactive Software, Inc.*,
   97 N.E.3d 396 (N.Y. 2018) .....................................................................................................15

*Hardy v. Streeval*,
   No. 7:22cv00430, 2024 WL 1607501 (W.D. Va. Apr. 12, 2024) ...........................................18

*Henderson v. ZeniMax Media, Inc.*,
   No. CV-12-0418, 2013 WL 308765 (D. Ariz. Jan. 25, 2013) .................................................11

*Hickey v. St. Martin's Press, Inc.*,
   978 F. Supp. 230 (D. Md. 1997) ...............................................................................................7

*Jahr Printing & Publ'g*,
   727 N.E.2d 549 (N.Y. 2000) ...................................................................................................15

*Joseph Burstyn, Inc. v. Wilson*,
   343 U.S. 495 (1952) .................................................................................................................15

*Katz v. Odin, Feldman & Pittleman, P.C.*,
   332 F. Supp. 2d 909 (E.D. Va. 2004) .......................................................................................7

*Leitner v. Liberty Univ., Inc.*,
   2020 WL 7128972 (W.D. Va. Dec. 4, 2020) .............................................................................5

*Lohan v. Take-Two Interactive Software, Inc.*,
   97 N.E.3d 389, 393 (N.Y. 2018) .............................................................................................15

*Lokhova v. Halper*,
   441 F. Supp. 3d 238 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021) .........................6, 7

*Lowe v. Clarke*,
   No. 3:20CV390, 2021 WL 4852174 (E.D. Va. Oct. 18, 2021) ...............................................11

*Miller v. Anheuser Busch, Inc.*,
    348 F. App'x 547 (11th Cir. 2009) ........................................................................7

*Moon v. CBS, Inc.*,
    7 Va. Cir. 68 (1981) ............................................................................................7

*Moore v. Nat'l Collegiate Athletic Ass'n*,
    2022 WL 2306761 (E.D. Va. June 27, 2022) ......................................................5

*Mukuna v. Gibson*,
    2011 WL 3793336 (E.D. Va. Aug. 25, 2011) ..............................................12, 13

*Myska v. RMS Techs.*,
    25 Va. Cir. 344 (1991) ........................................................................................7

*Nebb v. Bell Syndicate, Inc.*,
    41 F. Supp. 929 (S.D.N.Y. 1941) .......................................................................8

*Phoenix Renovation Corp. v. Rodriguez*,
    403 F. Supp. 2d 510 (E.D. Va. 2005) ................................................................18

*Polydoros v. Twentieth Century Fox Film Corp.*,
    79 Cal. Rptr. 2d 207 (Cal. Ct. App. 1997) ...............................................9, 10, 14

*Power Home Solar, LLC v. Sigora Solar, LLC*,
    No. 3:20-CV-00042, 2021 WL 3856459 (W.D. Va. Aug. 30, 2021) ..............17, 18

*Quill Ink Books, Ltd. v. Soto*,
    No. 1:19-cv-476, 2019 WL 5580222 (E.D. Va. Oct. 29, 2019) .........................14

*Richards v. Google LLC*,
    No. 5:25-cv-00082 (W.D. Va. filed Aug. 22, 2025) .............................................3

*Richards v. X Corp.*,
    No. 5:24-cv-00039 (W.D. Va. filed June 5, 2024) ..............................................3

*Ruffin-Steinback v. dePasse*,
    82 F. Supp. 2d 723 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th Cir. 2001) ..........16

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ......................................................................12, 16

*Schad v. Borough of Mount Ephraim*,
    452 U.S. 61 (1981) ............................................................................................15

*Seale v. Gramercy Pictures*,
    949 F. Supp. 331 (E.D. Pa. 1996) ....................................................................16

*Seale v. Warner Bros. Ent.*,
   No. A-14-CA-73-SS, 2014 WL 1514063 (W.D. Tex. Apr. 16, 2014) ....................................9

*SRA Int'l, Inc. v. McLean*,
   No. 07-0935, 2007 WL 4766697 (E.D. Va. Dec. 6, 2007) ......................................................12

*Swacker v. Wright*,
   277 N.Y.S. 296 (N.Y. Sup. Ct. 1935) ........................................................................................8

*Swift v. Frontier Airlines, Inc.*,
   2014 WL 12663211 (E.D. Va. Dec. 31, 2014) ...........................................................................5

*T.J. Hooker v. Columbia Pictures Indus.*,
   551 F. Supp. 1060 (N.D. Ill. 1982) ............................................................................................8

*Tamkin v. CBS Broadcasting, Inc.*,
   122 Cal. Rptr. 3d 264 (Cal. Ct. App. 2011) .............................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)....................................................................................................................6

*Terry v. Fox Television Studios, Inc.*,
   WL 5477468 (Cal. Ct. App. Oct. 2, 2013)................................................................................10

*TFOR LLC v. Virtustream, Inc.*,
   No. 2:16-cv-602, 2017 WL 11505355 (E.D. Va. June 22, 2017)..............................................17

*Town & Country Props., Inc. v. Riggins*,
   457 S.E.2d 356 (Va. 1995)........................................................................................................14

*Trans-Radial Sols., LLC v. Burlington Med., LLC*,
   2019 WL 3557879 (E.D. Va. Aug. 5, 2019)...............................................................................5

*Tyne v. Time Warner Ent. Co.*,
   901 So. 2d 802 (Fla. 2005), *aff'd*, 425 F.3d 1363 (11th Cir. 2005).........................................16

*Va. Citizens Def. League v. Couric*,
   910 F.3d 780 (4th Cir. 2018) ....................................................................................................12

*Webb v. Virginian-Pilot Media Cos.*,
   287 Va. 84 (2014) .....................................................................................................................13

*Whitehurst v. Showtime Networks, Inc.*,
   No. 1:08–CV–47, 2009 WL 3052663 (E.D. Tex. Sept. 22, 2009) ...........................................16

*Williams v. Newsweek, Inc.*,
   63 F. Supp. 2d 734 (E.D. Va. 1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999)..............................14

**Statutes**

N.Y. Civil Rights Law §§ 50-51 ................................................................................................14

Va. Code Ann. § 8.01-40 ................................................................................................... *passim*

Defendants Robert Kirkman ("Kirkman"), Skybound, LLC ("Skybound")[1], and Scopely, Inc. ("Scopely") (together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint ("Compl.") filed by Plaintiff Thomas Richards ("Plaintiff") with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

*The Walking Dead* comic books, television series, and *The Walking Dead: Road to Survival* mobile game are part of a popular franchise created by Defendant Robert Kirkman in 2004, set in a world after a zombie apocalypse. As the zombie apocalypse setting suggests (and the Complaint acknowledges), the works are fictional. A character named "Thomas Richards" appears in *The Walking Dead* comic series ("Comic Series") and the mobile game ("Mobile Game"). According to the Complaint, the "fictional Thomas Richards character is portrayed as a psychopathic serial killer" who feigns a conviction for tax fraud. *See* Compl. ¶ 54.

Plaintiff is also named Thomas Richards. On these grounds alone, he filed this frivolous lawsuit for $25 million, asserting claims for defamation, unauthorized use of name under Va. Code Ann. § 8.01-40, and unfair competition. But a common name is where any resemblance between the two Thomases (and the basis for Plaintiff's lawsuit) begins and ends. Unlike *The Walking Dead* character, Plaintiff does not appear to be a psychopathic murderer who survived a zombie apocalypse. And quite unlike *The Walking Dead*'s Thomas Richards, Plaintiff describes himself as "a religious commentator, Bible scholar, artist, and content creator focused on the Bible and historical research[,]" who experienced a "vision (and a dream) of Jesus when he was young" and has operated an online Bible ministry for approximately 25 years. Compl. ¶¶ 18, 28. It would be

---

[1] Incorrectly sued as "Skybound Entertainment, Inc."

difficult to imagine two men more dissimilar.  In an effort to stitch together these vast disparities into some semblance of a claim, Plaintiff claims that *The Walking Dead*'s Thomas Richards is based on him because Plaintiff once knew a man convicted of tax fraud, because Defendant Kirkman used the Internet during the mid-2000s, and because Plaintiff believes that Defendant Kirkman is "bias[ed] against biblical truth." Compl. at p. 9.

While the world of *The Walking Dead* is imaginative, Plaintiff's claims are equally fantastical.  He fails to state any plausible claim for relief.  *First*, Plaintiff's claims are time-barred because they arose in 2004 (when the Comic Series first featured the "Thomas Richards" character) and 2015 (when the Mobile Game was published).  *Second*, all of Plaintiff's claims must be dismissed because he does not plausibly plead that the *Walking Dead* character "Thomas Richards" depicts him.  *Finally*, each of Plaintiff's claims also fails on independent grounds: he has not alleged a single defamatory statement or implication consistent with Virginia pleading standards; Virginia's commercial misappropriation law, Va. Code Ann. § 8.01-40, does not apply to creative works like *The Walking Dead*; and Plaintiff cannot show that Defendants have "palmed off" the Comic Series or Mobile Game as affiliated with Plaintiff, as required under Virginia's narrow definition of "unfair competition."

Much like the zombies in *The Walking Dead*, Plaintiff's lawsuit is dead on arrival.  His claims must be dismissed with prejudice.

## **FACTUAL BACKGROUND**

### A.    **The Parties**

Defendant Robert Kirkman is the creator of *The Walking Dead* comic book series, which spawned a broader media franchise that includes a long-running television series, television spin-offs, and video and mobile games.  Compl. ¶¶ 2; 4, 12.  Defendant Skybound has published the

2

Comic Series since 2019.  Compl.  ¶¶ 13, 14.  Defendant Scopely developed and published *The Walking Dead:  Road to Survival* mobile game.  *Id.* ¶ 15.

Plaintiff Thomas Richards describes himself as a "religious commentator, Bible scholar, artist, and content creator focused on the Bible and historical research."  *Id.* ¶ 18.  He has operated an "internet bible ministry" for approximately 25 years and has published YouTube videos with titles such as "Nazi Germany was a creation of the Vatican and the Jesuits."  *Id.* ¶¶ 20–22.  He describes himself as a former supporter of Tony Alamo, a "controversial religious figure" who was convicted of tax fraud.  *Id.* ¶ 23.[2]

**B.**    **Thomas Richards Is a Fictional Character in *The Walking Dead* Comic Series and Mobile Game**

*The Walking Dead* franchise, consisting of comic books, television series, and video and mobile games, forms a sprawling, fictional world populated with numerous characters.  *Id.* ¶ 4.  One of these characters is named Thomas Richards.  *Id.* ¶ 2.

Plaintiff pleads that in 2004—over 20 years ago—Defendant Kirkman created Thomas Richards as a character for the Comic Series.  Compl. ¶ 53.  The character of Thomas Richards is "a psychopathic serial killer who brutally murders multiple people[,] including minors[,] " "lies about being imprisoned for tax fraud[,]" and "exhibits sadistic and depraved behavior."  *Id.* ¶¶ 53-55.  The character also appears in *The Walking Dead:  Road to Survival* Mobile Game.  *Id.* ¶ 57.

---

[2] Plaintiff also appears to be a serial plaintiff in this district, having recently sued Google and X based on similarly grandiose allegations.  *See Richards v. Google LLC*, No. 5:25-cv-00082 (W.D. Va. filed Aug. 22, 2025), Doc. No. 1 at 2 (alleging Google is an "illegal monopolist" that systematically suppressed Mr. Richards' religious expression in search results while amplifying competing Catholic perspectives); *Richards v. X Corp.*, No. 5:24-cv-00039 (W.D. Va. filed June 5, 2024), Doc. No. 1 at pp. 10, 34, 61 (alleging X violated his civil rights by "do[ing] something internally to keep his posts from being viewed even by people who have signed up to receive alerts from his page" and demanding $70 million in damages).

A character named "Tomas" (not "Thomas Richards") appears in AMC's *The Walking Dead* television series. *Id.* ¶ 61.

### C.    The Instant Lawsuit

On September 4, 2025, Plaintiff filed this lawsuit because he believes that the Thomas Richards character in *The Walking Dead*, a child-murdering fictional character in a zombie apocalyptic universe, is based on him. *Id.* ¶ 55. In addition to suing Defendants Kirkman, Skybound, and Scopely over the Comic Series and Mobile Game, he has sued Image Comics, Inc., which published the comic book series from 2003 to 2019. Compl. ¶ 14. He has also sued Telltale Games, Inc. and LCG Entertainment, which developed and published *The Walking Dead* video game series. Compl. ¶¶ 16–17.

Plaintiff asserts claims for (1) defamation, (2) violation of Va. Code Ann. § 8.01-40 for alleged unauthorized use of Plaintiff's name, and (3) unfair competition, claiming that by featuring a fictional character called Thomas Richards Defendants have "palmed off" *The Walking Dead* comics and games as affiliated with Plaintiff. The Complaint seeks $25 million in damages as well as various forms of injunctive and equitable relief—including the creation of a new story arc for the Thomas Richards character where he undergoes a "complete moral transformation, redemption, and evolution into a heroic figure who actively works to protect others and demonstrates genuine remorse for past actions." Compl. at p. 37.

### ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

4

550 U.S. at 556).  "Conclusory statements that are a mere recitation of the elements of a cause of action do not meet this standard."  *Swift v. Frontier Airlines, Inc.*, No. 1:14-cv-1139, 2014 WL 12663211, at *1 (E.D. Va. Dec. 31, 2014) (citing *Iqbal*, 556 U.S. at 678), *aff'd*, 636 F. App'x 153 (4th Cir. 2016).  "The plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  However, a court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Leitner v. Liberty Univ., Inc.*, No. 6:19-cv-00029, 2020 WL 7128972, at *4 (W.D. Va. Dec. 4, 2020) (quotation omitted).

### A.    All of Plaintiff's Claims Are Time-Barred

As an initial matter, this Court need not even reach the merits of Plaintiff's claims because each is time-barred under the applicable statute of limitations.

Under Virginia law, the statute of limitations for a defamation claim (Count I) is one year. Va. Code Ann. § 8.01-247.1.  For a claim under Va. Code Ann. § 8.01-40 (Count II), the statute of limitations is five years.  *Moore v. Nat'l Collegiate Athletic Ass'n*, No. 121-CV-01447, 2022 WL 2306761, at *2 (E.D. Va. June 27, 2022).  And for unfair competition (Count III), the statute of limitations is two years.  *Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 2:18-CV-656, 2019 WL 3557879, at *6 (E.D. Va. Aug. 5, 2019).

Accordingly, for ***any*** of Plaintiff's claims to be timely, they would need to arise no earlier than September 24, 2020.  But as the Complaint makes clear, all of his claims accrued long before that date.  Plaintiff alleges that his claims against Defendants Kirkman and Skybound arose ***21 years ago*** ("[i]n or around 2004"), when Kirkman "created a character named 'Thomas Richards' who appeared in 'The Walking Dead' comic book series."  Compl. ¶ 53.  And he pleads that his

claims against Defendants Skybound and Scopely arose from the Mobile Game (*id.* ¶ 57), which was published in August 2015.[3]  His claims are therefore expired.

Plaintiff cannot reanimate these long-dead claims by pointing to ongoing distribution of various *Walking Dead* media or third-party fan-created content.  First, Plaintiff's vague allegation that "the defamatory content continues to be distributed through reprints, digital editions, and ongoing game operations" cannot extend the limitations period.  Compl. ¶ 57; *see also id.* ¶¶ 84, 101–02.  Not only does Plaintiff fail to identify any such "reprint," "digital edition," or "game operation," he does not allege *when* those materials were allegedly published.  And even if he had, the single publication rule applies to each of his claims, requiring that "'only one cause of action [can] be maintained for any single publication,'" *Lokhova v. Halper*, 441 F. Supp. 3d 238, 253–54 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021) (quotation omitted).[4]  The single publication

_____

[3] While Plaintiff does not identify the game's release date in the Complaint, this information is publicly reported, including on the *Walking Dead* "wiki" site that he cites throughout the complaint.  Fandom, https://walkingdead.fandom.com (last visited Oct. 29, 2025).  *See* John Gaudiosi, "*Kill zombies on your phone with a 'The Walking Dead' mobile game*," Fortune.com (Aug. 27, 2015, 6:17 PM), https://fortune.com/2015/08/27/walking-dead-mobile-game/ (announcing release of the Mobile Game) (last visited Oct. 29, 2025); *see also* Fandom, "The Walking Dead: Road to Survival," https://walkingdead.fandom.com/wiki/The_Walking_Dead:_Road_to_Survival (last visited Oct. 29, 2025) (confirming the Mobile Game was "released on August 27th, 2015").  Because the publicly reported date of the game's release is "not subject to 'reasonable dispute'" and comes from materials cited and relied upon in the Complaint, this Court may take judicial notice that the Mobile Game was released on August 27, 2015.  *See BYD Co. Ltd. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1, 13 (D.D.C. 2021), *aff'd*, No. 21-7099, 2022 WL 1463866 (D.C. Cir. May 10, 2022); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (court may consider materials "incorporated into the complaint by reference").

[4] The single-publication rule is not limited to defamation claims; it applies with equal force to claims for violation of the right of publicity or unauthorized use of name or likeness claims.  *See, e.g.*, *Fischer v. Forrest*, Nos. 14 Civ. 1304 & 14 Civ. 1307, 2017 WL 1063464, at *5 (S.D.N.Y. Mar. 21, 2017) ("single publication rule" applies to claim under New York's analogous right of publicity statute and holding that "continuous access to material on a website does not constitute republication"); *Doe v. Aylo Glob. Ent. Inc.*, No. CV 23-07488, 2024 WL 4599539, at *8 (C.D. Cal. June 24, 2024) (applying single publication rule to California unauthorized use of likeness

rule applies to allegedly defamatory "'[f]orms of mass communication or aggregate publication,'" *id.* at 253 (quotation omitted), and instructs that "[s]ubsequent distribution of a defamatory statement . . . does not create independent actions or start the statute of limitations running anew." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 918 (E.D. Va. 2004) (citation omitted).[5]  It prevents a plaintiff from extending the limitations period indefinitely simply because the challenged content has "remained online" or continues to be distributed.  *Davis v. Roessler*, No. 1:20-cv-992, 2022 WL 195496, at *6 (E.D. Va. Jan. 21, 2022).[6]  Accordingly, Plaintiff's allegation that the Comic Series and the Mobile Game continued to be available after they were first published cannot rescue his untimely claims.  *See* Compl. ¶¶ 57, 101.

**Second**, Plaintiff cannot assert claims against Defendants based on references to the Thomas Richards character in "extensive online databases" and "fan databases."  Compl. ¶ 57. "[A]lleged third party republication of statements . . . do[es] not retrigger the statute of limitations for those statements."  *Lokhova*, 441 F. Supp. 3d at 259.  For the same reason, Plaintiff does not have a timely claim against Defendants based on receiving "Google Alerts" about "Thomas Richards" within an applicable statutory period.  Compl. ¶ 103.

---

claim); *Miller v. Anheuser Busch, Inc.*, 348 F. App'x 547, 550 (11th Cir. 2009) ("Florida applies the 'single publication rule' in misappropriation cases.").

[5] Plaintiff's citation to *Myska v. RMS Techs.*, 25 Va. Cir. 344 (1991) to contend that the single publication rule does not apply to his commercial misappropriation claim is inapposite.  *See* Compl. ¶ 101.  As Plaintiff admits, in *Myska*, the court declined to apply the single publication rule because there was "no mass communication [] used."  *Id.* at * 2.  But here, Plaintiff's claim does not arise from a private communication but from the dissemination of a popular Comic Book and Mobile Game.  *Myska*, on its face, is thus irrelevant.

[6] *See, e.g.*, *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 236 (D. Md. 1997) (calculating statute of limitations from original publication of book and barring plaintiff from extending statute of limitations by relying on later sales of book); *Moon v. CBS, Inc.*, 7 Va. Cir. 68 (1981) (applying single publication rule and dismissing lawsuit filed more than one year after original publication dates of books).

Because all of Plaintiff's claims against Defendants accrued well outside any applicable statute of limitations, they should be dismissed with prejudice.

**B.    Plaintiff Cannot State Any Claim Because the Fictional *The Walking Dead* Character Does Not Depict Him**

In addition to being time-barred, all of Plaintiff's claims share the same fatal flaw: he does not plausibly allege that the "Thomas Richards" character in *The Walking Dead* depicts him.

The only direct link alleged between Plaintiff and the *Walking Dead* character is that they share the same name, "Thomas Richards."  Beyond their shared name, the *Walking Dead* character allegedly "'claims to be in prison for tax fraud', but is actually a psychopathic murderer."  Compl. ¶ 56.  Plaintiff does not claim to be a murderer or a tax fraud himself; instead, he tries to draw a line between the "tax fraud" reference and the fact that "[d]ecades ago," he was a supporter of Tony Alamo, a controversial religious leader who was convicted of tax fraud.  *Id.* ¶ 23.

Courts across the country routinely reject attempts by plaintiffs to sue over fictional characters who share the same name or other generic characteristics with them.  For example, nearly a century ago, a New York court rejected a misappropriation claim by a local attorney over a character in a mystery novel who shared his name, holding that "[t]he mere use of the plaintiff's surname and Christian name with his middle initial omitted without any other identifying feature cannot be held a sufficient basis for relief . . . ."  *Swacker v. Wright*, 277 N.Y.S. 296, 297 (N.Y. Sup. Ct. 1935).  Courts have also dismissed claims by, *e.g.*, a married couple who shared the same name as characters in a syndicated comic strip[7]; a professional woodcarver, over a fictional television series about a police officer with the same name[8]; a "short, fat and bald" plaintiff from

---

[7] *Nebb v. Bell Syndicate, Inc.*, 41 F. Supp. 929, 930 (S.D.N.Y. 1941).

[8] *T.J. Hooker v. Columbia Pictures Indus.*, 551 F. Supp. 1060, 1062 (N.D. Ill. 1982).

Queens, New York, named "Michael Costanza," over the character of "George Costanza" in the television series *Seinfeld*[9]; a karate teacher known locally as the "Karate Kid," over the character and movie title "Karate Kid"[10]; a plaintiff who claimed to be "the only psychiatrist surnamed Allen in Manhattan[,]" over a fictional book character named "Dr. Allen"[11]; and a man who claimed to be defamed by a cross-dressing fictional movie character who shared his first name.[12]  *See also* J. Thomas McCarthy & Roger E. Schechter, 1 Rights of Publicity & Privacy § 4:49 (2d ed., May, 2025 update) ("Since many persons have the same name, mere name-sameness alone should not be sufficient proof of identification.  There must be some 'plus factors' in the context of defendant's use which support an identification of plaintiff.").  Applying this well-established law, Plaintiff cannot state any claim over *The Walking Dead* character "Thomas Richards"—whether in the Comic Series, the Mobile Game, the television series, or any other medium—based on a shared name.

Even where plaintiffs identify similarities beyond name alone—and far more than Plaintiff alleges here—courts still reject these claims.  For example, in *Polydoros v. Twentieth Century Fox Film Corp.*, 79 Cal. Rptr. 2d 207 (Cal. Ct. App. 1997) (subsequent history omitted), plaintiff Michael Polydoros claimed that the film "The Sandlot" used his identity in a fictional character named "Michael Palledorous," nicknamed "Squints."  *Id.* at 208.  Polydoros grew up in a similar setting to that in the film; went to school with the person who wrote and directed the film; and,

---

[9] *Costanza v. Seinfeld,* 693 N.Y.S.2d 897, 899 (N.Y. Sup. Ct. 1999), *aff'd as modified*, 719 N.Y.S.2d 29 (N.Y. Sup. Ct. 2001).

[10] *DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 53 (E.D.N.Y. 1994).

[11] *Allen v. Gordon*, 446 N.Y.S.2d 48, 49 (N.Y. App. Div. 1982), *aff'd*, 56 N.Y.2d 780 (1982).

[12] *Seale v. Warner Bros. Ent.*, No. A-14-CA-73-SS, 2014 WL 1514063, at *3 (W.D. Tex. Apr. 16, 2014).

like "Squints," played baseball on a sandlot, swam in a community pool, and was "somewhat obstreperous." *Id.* The court dismissed the claims as a matter of law, holding that the plaintiff "is not entitled to recover under a commercial appropriation of name or likeness theory merely because [defendants] used a name that sounds like appellant's name or employed an actor who resembles appellant at the age of 10." *Id.* at 212. The court explained that "rudimentary similarities in locale and boyhood activities do not make [the film] about [plaintiff's] life," concluding that the "[f]aint outlines [plaintiff] has seized upon do not transform the fiction into fact." *Id.* at 210.

Similarly, in *Tamkin v. CBS Broadcasting, Inc.*, 122 Cal. Rptr. 3d 264 (Cal. Ct. App. 2011), the court rejected a defamation claim by two married real estate agents over a fictional real-estate agent couple in a *CSI* episode—even though one of the show's writers had worked with the couple and the casting synopsis used their names (Scott and Melinda Tamkin) as placeholders for the characters. *Id.* at 273. The court explained that "[a]s a matter of law, mere similarity or even identity of names is insufficient to establish a work of fiction is of and concerning a real person." *Id.* at 274. Indeed, if claims over the use of name or likeness could be so broadly construed, "then every person who sees some similarity between their personal life experiences and a character on a television show or movie could assert a misappropriation claim." *Terry v. Fox Television Studios, Inc.*, No. B243249, 2013 WL 5477468, at *4 (Cal. Ct. App. Oct. 2, 2013) (unpublished) (rejecting misappropriation claims by plaintiff who believed character in television series *Burn Notice* was based on him); *see also Aguilar v. Universal City Studios, Inc.*, 219 Cal. Rptr. 891-92 (Cal. Ct. App. 1985) (dismissing misappropriation claim where plaintiff and fictional movie character shared the same first name and participated in the event depicted in the film).

10

Plaintiff does not even allege any personal interaction with Defendants that would make them aware of his existence in the first place. Instead, he alleges "[u]pon information and belief" that it is "quite likely" Defendant Kirkman knew of him because Plaintiff operated a website with "hundreds (or close to a thousand)" of daily views in the early 2000s, when Defendant Kirkman was "actively engaged with internet culture." Compl. ¶¶ 3-39. Such "[c]onclusory allegations are based on speculation and conjecture and are not entitled to a presumption of truth." *Lowe v. Clarke*, No. 3:20CV390, 2021 WL 4852174, at *12 (E.D. Va. Oct. 18, 2021) (subsequent history omitted). Nor are they sufficient. *See, e.g.*, *Duncan v. Universal Music Grp., Inc.*, No. 11-CV-5654, 2012 WL 1965398, at *1 (E.D.N.Y. May 31, 2012) (dismissing claim that plaintiff's identity was used in two fictional movies, based on a character who shared plaintiff's prison nickname and alleged links based on "numeric codes"—*e.g.*, a train car with numbers similar to his birthdate); *Henderson v. ZeniMax Media, Inc.*, No. CV-12-0418, 2013 WL 308765, at *1 (D. Ariz. Jan. 25, 2013) (rejecting claim that video game character was based on plaintiff because both were balding men from Arizona; the game took place in a state where plaintiff once lived; and the character wore an "X," corresponding to the Greek letter that sounds like plaintiff's last name of "Kai"); *Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606637, at *1 (N.D. Ill. Mar. 26, 2003) (dismissing plaintiff's claim that he was the basis for cartoon sitcom character, where plaintiff alleged that both he and the cartoon character, "use[] a voice box to speak," had "'similar head-neck placement,' facial characteristics, [and] build," "use[] a cane to walk," "wear baseball caps with writing above the brims," and had deceased wives who were cremated).[13]

---

[13] Plaintiff attempts a logical leap from an online article reporting that Defendant Kirkman gave a *different* character the same first name as his childhood antagonist, to an assumption that the "Thomas Richards" character must be *Plaintiff's* fictional analogue. That leap falls far short of plausibility, and entertaining it would run afoul of core constitutional principles. The First Amendment "safeguards the storytellers and artists who take the raw materials of life—including

In sum, Plaintiff has not pleaded sufficient similarities between himself and the fictional *The Walking Dead* character that would "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Whether framed as defamation, statutory misappropriation, or unfair competition, all of Plaintiff's claims should be dismissed with prejudice because he cannot plausibly allege the Defendants used his identity in the first place.

### C.    Each of Plaintiff's Claims Fails on Independent Grounds

Each of the grounds for dismissal discussed above would be sufficient to dismiss all of Plaintiff's claims against these Defendants as a matter of law. But each of Plaintiff's claims also fails on additional, independent grounds.

### 1.    Plaintiff Fails to Plead Any Defamatory Statements or Implications (Count I)

Under Virginia law, a defamation plaintiff must plead "(1) publication of (2) an actionable statement with (3) the requisite intent." *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (quotation omitted). In order to be "actionable," the statements must be "both false and defamatory[,]" and the plaintiff must "establish that the alleged defamatory statement was 'of and concerning'" him. *Id.* (quotation omitted); *see also SRA Int'l, Inc. v. McLean*, No. 07-0935, 2007 WL 4766697, at *3 (E.D. Va. Dec. 6, 2007).

Plaintiff fails to clear the most basic hurdle of a defamation claim under Virginia law: pleading the "exact alleged defamatory words" at issue. *Mukuna v. Gibson*, No. 1:11cv493, 2011 WL 3793336, at *3 (E.D. Va. Aug. 25, 2011); *see also Brackney-Wheelock v. City of*

---

the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books, movies, or plays." *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016) (First Amendment barred right of publicity claim by former soldier who claimed he was the basis for the main character in the award-winning film *The Hurt Locker*).

*Charlottesville*, 652 F. Supp. 3d 603, 623 (W.D. Va. 2023) ("[T]he exact words spoken or written

must be set out . . . *in haec verba.*"), *appeal dismissed*, No. 23-1129, 2024 WL 5360949 (4th Cir.

Dec. 30, 2024).

Plaintiff does not identify any statement—or even a specific issue—of the Comic Series

that allegedly defames him, nor does he identify anything specific from the Mobile Game.  Instead,

he summarizes third-party fan "wiki" pages to allege that the "fictional Thomas Richards character

is portrayed as a psychopathic serial killer who lies about being imprisoned for tax fraud to conceal

his true violent nature[]" and that "[t]he character brutally murders multiple people, including

minors, and exhibits sadistic and depraved behavior."  Compl. ¶¶ 54, 56.  "[S]uch imprecise

allegations[,]" predicated only on "general damage to his reputation . . . but no specific statement"

"are insufficient" to plead a defamation claim.  *Elamon v. Red Robin Int'l, Inc.*, No. 2:06cv202,

2006 WL 2850644, at *4 (E.D. Va. Sept. 29, 2006); *see also Mukuna,* 2011 WL 3793336, at *3

(dismissing defamation claim where complaint "does not include the exact defamatory . . . words

that [defendant] allegedly wrote.").

Nor does Plaintiff plead defamation by implication.  To state a claim for defamation by

implication or innuendo, "the alleged implication must be reasonably drawn from the words

actually used."  *Webb v. Virginian-Pilot Media Cos.,* 287 Va. 84, 89 (2014) (citation omitted).  The

plaintiff must "delineat[e] the defamatory implication" to satisfy federal notice pleading

requirements.  *Eramo v. Rolling Stone LLC*, No. 3:15-CV-00023, 2016 WL 6462187, at *2.

Because Plaintiff fails to identify the statements from either the Comic Series or Mobile Game that

form the basis for any alleged defamatory implication, this version of his claim fails as well.  *See*

*Fairfax v. CBS Broadcasting Inc.*, 534 F. Supp. 3d 581, 591–92 (E.D. Va. 2020), *aff'd*, 2 F. 4th

286 (4th Cir. 2021); *Eramo*, 2016 WL 6462187, at *2.

This is not just a pleading deficiency. Even if Plaintiff were to identify specific challenged statements or implications, his claim would still fail as a matter of law because—as explained above—nothing about the fictional "Thomas Richards" character can be considered a statement "of and concerning" Plaintiff for purposes of a defamation claim. "[W]hether a statement 'is reasonably capable of the defamatory meaning [] ascribe[d] to it[,]'" including whether it can reasonably be considered "of and concerning" the plaintiff, "is a question of law, not fact[,]" and "[r]esolving it is an essential threshold, gatekeeping function of the court." *Quill Ink Books, Ltd. v. Soto*, No. 1:19-cv-476, 2019 WL 5580222, at *3 (E.D. Va. Oct. 29, 2019) (quoting *Webb*, 287 Va. at 9-91). Because "[n]o sensible person could assume or believe from seeing [the Comic or Mobile Game] that it purports to depict the life of [Plaintiff Thomas Richards]," *Polydoros*, 79 Cal. Rptr. 2d. at 212, amendment would be futile and dismissal should be with prejudice.

### 2.    Virginia's Commercial Misappropriation Statute Does Not Apply to a Fictional Character in *The Walking Dead* (Count II)

Va. Code Ann. § 8.01-40 creates a cause of action when a person's "name, portrait, or picture" is used for "advertising purposes or for the purposes of trade" without "written consent." As set forth above, Plaintiff cannot plausibly plead that the *Walking Dead* character is a "use" of his name in the first place, which dooms this claim as a matter of law. But it also fails because a fictional character in a creative work is not a use for "advertising purposes or for the purposes of trade" within the scope of the statute.

Va. Code Ann. § 8.01-40 is "substantially similar" to New York's commercial misappropriation statute, N.Y. Civil Rights Law §§ 50-51, and Virginia courts therefore "look to New York courts for guidance[]" in interpreting its statute. *Town & Country Props., Inc. v. Riggins*, 457 S.E.2d 356 (Va. 1995); *see also Williams v. Newsweek, Inc.*, 63 F. Supp. 2d 734, 736 (E.D. Va. 1999) ("[C]ourts applying [Va. Code Ann. § 8.01-40] have relied upon the interpretation

of the similarly-phrased New York law as conducted by New York Courts for guidance in construing this provision.") (citation omitted), *aff'd*, 202 F.3d 262 (4th Cir. 1999).

Because "freedom of speech and the press . . . transcends the right to privacy," courts construing the similar New York statute "have cabined" commercial misappropriation claims "to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest guaranteed by the First Amendment." *Lohan v. Take-Two Interactive Software, Inc.*, 97 N.E.3d 389, 393 (N.Y. 2018) (internal quotation marks omitted), *aff'd sub nom. Gravano v. Take-Two Interactive Software, Inc.*, 97 N.E.3d 396 (N.Y. 2018). Such claims are "narrowly construed" and "strictly limited to nonconsensual commercial appropriations of the name, portrait [voice], or picture of a living person." *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 727 N.E.2d 549, 551 (N.Y. 2000). They prohibit the use of someone's name or image "'for advertising purposes or for the purposes of trade' *only*, and nothing more." *Finger v. Omni Publ'ns Int'l, Ltd.*, 566 N.E.2d 141, 141 (N.Y. 1990) (quotation omitted).

A character in the fictional world of *The Walking Dead*—whether depicted in the Comic Series, the Mobile Game, or any other related work—is not a use for "advertising" or "trade" within the meaning of Va. Code Ann. 8.01-40. "That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952); *see also Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981) ("[M]otion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment").[14]

---

[14] Video games are equally protected by the First Amendment. "Like the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages— through many familiar literary devices (such as characters, dialogue, plot, and music) and through

Applying these principles, courts around the country have held that the First Amendment protects fictional and semi-fictional works from commercial misappropriation and right-of-publicity claims, just as it protects news reporting and other fact-based publications. *See, e.g.*, *Costanza*, 719 N.Y.S. 2d at 30 ("[w]orks of fiction do not fall within the narrow scope of the statutory definitions of 'advertising' or 'trade'" in New York misappropriation statute); *Sarver,* 813 F.3d at 905–06 (First Amendment barred California right-of-publicity claim over alleged use of Army sergeant's life story in film "The Hurt Locker"); *Whitehurst v. Showtime Networks, Inc.*, No. 1:08–CV–47, 2009 WL 3052663, at *6-7 (E.D. Tex. Sept. 22, 2009) (movie's "fictionalized depiction" of murder victim was not actionable because "expression by means of motion pictures" is constitutionally protected; thus, the work did not "constitute a 'commercial purpose' necessary to support a claim for misappropriation."); *Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 730–31 (E.D. Mich. 2000) (recognizing First Amendment principles in holding that Michigan's misappropriation law did not apply to docudrama miniseries about the Temptations), *aff'd*, 267 F.3d 457, 461–62 (6th Cir. 2001); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996) (docudrama about Black Panther Party was "for the purpose of First Amendment expression," not "for the purposes of trade" or for a "commercial purpose" under Pennsylvania law); *Tyne v. Time Warner Ent. Co.,* 901 So. 2d 802, 805 (Fla. 2005) (commercial misappropriation claim did not apply to use of person's identity in "works of fiction" and therefore movie was not a "commercial purpose" under Florida statute), *aff'd*, 425 F.3d 1363 (11th Cir. 2005).

---

features distinctive to the medium (such as the player's interaction with the virtual world)." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011).

Thus, even if the "Thomas Richards" character from *The Walking Dead* **was** based on Plaintiff (and it clearly is not, *see supra*), Plaintiff still could not state a claim under Va. Code Ann§ 8.01-40 over that character's appearance in the Comic Series, the Mobile Game, or any other *Walking Dead*-related works. This claim should be dismissed with prejudice.

### 3.    Plaintiff Fails to Plead Unfair Competition (Count III)

Finally, Plaintiff cannot state a claim for unfair competition. Virginia recognizes only "a narrow, sharply defined common law definition of unfair competition, i.e. 'deception, by means of which goods of one dealer are palmed off as those of another.'" *TFOR LLC v. Virtustream, Inc.*, No. 2:16-cv-602, 2017 WL 11505355, at *8 (E.D. Va. June 22, 2017) (quotation omitted). To satisfy that stringent standard, Plaintiff must allege that: (1) that Defendants are "holding [themselves] out as" Plaintiff to "deceive consumers"; (2) that Defendants are "'palming' off [their] services as [Plaintiff's] services"; and (3) that Defendants "have in fact deceived [Plaintiff's] customers." *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-CV-00042, 2021 WL 3856459, at *11 (W.D. Va. Aug. 30, 2021). He does not and cannot make this showing.

***First***, the Complaint does not allege that Defendants used "Thomas Richards" to attract customers or are masquerading as Plaintiff in the marketplace. *See Power Home Solar*, 2021 WL 3856459, at *11 (dismissing claim where plaintiff failed to allege defendant "held itself out to the public as" plaintiff). At most, Plaintiff speculates that internet users searching the name "Thomas Richards" may also come across *The Walking Dead* content, Compl. ¶¶ 75, 114; but that does not demonstrate that Defendants are deceptively holding themselves out as Plaintiff, as required to plead an unfair competition claim.

***Second***, Plaintiff's conclusory allegation that Defendants are "palming off" their products as "originating from" Plaintiff by featuring a character in the Mobile Game and Comic named

17

Thomas Richards (Compl. ¶¶ 112, 113) is nonsensical. Plaintiff does not and cannot explain how including a (minor) character named "Thomas Richards" in a detailed fictional world would convey that the Mobile Game or Comic Series originated from Plaintiff. *See Power Home Solar*, 2021 WL 3856459, at *11 (dismissing claim because plaintiff failed to adequately allege that defendant was "'palming off'" its services as plaintiff's).

*Finally*, Plaintiff fails to plead that any consumers searching for his ministry services "have in fact" been "deceived" into believing that he is behind the Mobile Game or the Comic Series. *Power Home Solar,* 2021 WL 3856459, at *11. Nor is such consumer deception plausible where *The Walking Dead*'s Thomas Richards is a fictional murderer from a zombie-apocalypse series and Plaintiff is a real Christian minister. *See id.* ("deception" is "essential element" of unfair competition claim under Virginia law); *Phoenix Renovation Corp. v. Rodriguez*, 403 F. Supp. 2d 510, 518 (E.D. Va. 2005) (dismissing unfair competition claim where there was "no allegation that [the defendant] is attempting to deceive the buying public by holding itself out as [the plaintiff]").[15]

Because Plaintiff did not and cannot plead that Defendants have "palmed off" the Comic Series or Mobile Game as being created by or associated with Plaintiff, his unfair competition claim must be dismissed with prejudice.

---

[15] Notably, while Plaintiff claims Defendants "diluted the distinctive character of his name," Compl. ¶ 115, official government sources (of which this Court can take judicial notice, *see Hardy v. Streeval*, No. 7:22cv00430, 2024 WL 1607501, at *1 n.2 (W.D. Va. Apr. 12, 2024)) show that his name is hardly "distinctive." In 2024, the Social Security administration ranked "Thomas" the ninth most common name of the last century. *See* Social Security, "*Top Names Over the Last 100 Years*," https://www.ssa.gov/OACT/babynames/decades/century.html. And "Richards" is the 231st most common surname, according to the 2010 census. *See* https://www.census.gov/topics/population/genealogy/data/2010_surnames.html.

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  October 31, 2025

Respectfully submitted,

*/s/ Patrick J. Curran Jr.*

Patrick J. Curran, Jr. (VSB #86144)
Alison Schary (*admission forthcoming*)
Nimra H. Azmi (*pro hac vice*)
Davis Wright Tremaine LLP
1301 K Street NW
Suite 500 East
Washington, D.C. 20005
(202) 973-4200
patcurran@dwt.com
alisonschary@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendants Robert Kirkman,
Skybound, LLC, and Scopely Inc.*

19