## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

THOMAS RICHARDS,

*Plaintiff,*

v.

**Case No.: 5:25-cv-00089-JHY-JCH**

ROBERT KIRKMAN,
SKYBOUND ENTERTAINMENT, INC.,
(a Delaware corporation);
IMAGE COMICS, INC.
(a California Corporation);
SCOPELY, INC.
(a Delaware Corporation);
TELLTALE GAMES/LCG ENTERTAINMENT,

*Defendants.*

## DEFENDANT IMAGE COMICS' MEMORANDUM IN SUPPORT OF
## ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant Image Comics, Inc. ("Image Comics") files this Memorandum in Support of

its Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss the Complaint for failure to state

a claim.

## I.    SUMMARY

The Complaint does not plead facts that plausibly support the claims and therefore must

be dismissed pursuant to the U.S. Supreme Court precedents of *Bell Atl. Corp. v. Twombly*, 550

U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (henceforth, "Twombly/Iqbal"). The

timeline pleaded does not plausibly support Plaintiff Thomas "and sometimes Tommy"

Richards' theory of defamation.  Plaintiff pleaded that co-defendant Robert Kirkman created a

comic book character named "Thomas Richards" "in or around 2004[,]" (Compl. ¶ 53) as part of

The Walking Dead comic book series ("series").  The presupposition of Plaintiff's theory is that

part of the public "may reasonably" associate Plaintiff Tommy with the fictional Thomas

Richards character, based upon Tommy's support until 2009 of Tony Alamo. Compl. ¶¶ 2, 56,

65, 91.   The real-life Tony Alamo had nothing whatsoever to do with Image Comics, the series, or the fictional character, "Thomas Richards."   *See id.*  Plaintiff fails to plead sufficient facts that if true would make his claims plausible.  Even making all reasonable inferences in favor of Plaintiff, there are not sufficient facts to support his legal claims.

Plaintiff complains without objective factual allegations that because the fictional Thomas Richards character was violent, and fictionally passed himself off as convicted for tax evasion, that some part of the public will associate Plaintiff's decade old association with a third party Tony Alamo and Tony Alamo's tax convictions, to Plaintiff, who per his own allegations does not have these same characteristics but merely, and coincidentally, a similar name.  Compl. ¶¶ 23, 75, 76, 81, 94.

Tony Alamo has nothing to do with the series.  There is no character by that name in the series.  Plaintiff does not plead that either he, or Mr. Alamo, lied about the latter's tax convictions.  Instead, Plaintiff pleads "***unconscious linking***" and "***involuntary association***" between the violent fictional content in the series and the real-life Thomas Richards via the unrelated intermediary, Tony Alamo.  Compl. ¶ 76.  The fictional character in the series told other fictional prison inmates that he was convicted of tax crimes, instead of the violent felonies that he was convicted of.  Compl. ¶ 56. From this, Mr.  Richards makes the amazing leap of faith that followers of Mr. Richards' specific religious views, would be avid consumers of dystopian content, and would instantly link this fictional character with Tony Alamo, convicted of tax crimes 20 years earlier in real life. *Id.* This despite Mr. Alamo never being mentioned in the series, or in any of Mr. Kirkman's content.  This is too implausible for *Twombly/Iqbal* or for fiction, as the suspension of disbelief is attenuated to the point of non-existence.

This "Jenga Tower" of speculations includes *all* of the following:

2

(1)    Tommy posted content on the Internet in the 2000s, and Kirkman therefore must have known about Tommy's content by "in or around 2004"; Compl. ¶ 38.

(2)    Kirkman developed a dislike of Tommy because of Tommy's online evangelizing, and decided to defame Tommy; Compl. ¶ 55.

(3)    *Some of the public would associate the Thomas Richards character created in "2004" with Tommy because the character told other prisoners that he had a tax offense, as Tommy had publicly supported Tony Alamo, who also had a "decades old" tax fraud conviction[1]*; and

(4)    That because "[t]here have been cases where "we've [Image Comics] designed logos and helped redesign characters, and done cover sketches" that Image Comics must have been involved in "redesigning" the Thomas Richards character. Compl. ¶ 83.

Regarding (1):  Plaintiff misses the irony of his implying omniscience to Kirkman.  There were not enough hours in the day in the early 2000s to find and consume all Internet content on bulletin boards and other *fora*.  Plaintiff Tommy pleads no facts at all showing that Kirkman was even aware of Plaintiff Tommy from 2000-2003.  He pleads only on "information and belief." There are no factual allegations to plausibly infer that Kirkman knew or was aware of Plaintiff prior to him filing this Complaint.

Regarding (2): Tommy, however, is sure that if Mr. Kirkman had known about Tommy, "that he **would** view Mr. Richards'" content "with similar hostility."  Compl.  ¶ 33 (emphasis

---

[1] Compl. ¶ 2:  "This character is portrayed as a depraved serial killer who falsely claims to be in prison for tax fraud to hide his true violent crimes – a deliberate connection to Mr. Richards' former association with convicted felon Tony Alamo, who was imprisoned for tax fraud."

added). "Would" is conditional, meaning that IF a contingent condition occurred, then X. Plaintiff pleads "on information and belief, [that] Kirkman *likely* has antipathy towards Mr. Richards'" "content." Compl. ¶ 55 (emphasis added). He presumes animus based upon religious belief without any facts. This is implausible as a matter of law. *Francis v. Giacomelli*, 588 F.3d 186, 195 (4th Cir. 2009); *see also Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 70 (2d Cir. 2015).

Regarding (3): this is a "*Six Degrees of Kevin Bacon"* parlor trick, where the Complaint attempts to link the fictional Thomas to a real life person Tony and then back to real-life Plaintiff Tommy. No facts are alleged to plausibly support Plaintiff's conclusion that his "dedicated[2] [Christian] audience" would (or did) read a dystopian comic book, and that in doing so these unidentified persons made a connection between third party Tony Alamo's **1994** tax convictions when reading the comic book line "in or around **2004**" to a fictional Thomas Richards convict telling other cons that he was in for tax fraud, and then that is somehow linked to the Plaintiff Thomas/Tommy Richards. No facts are alleged to support such a tenuous linkage. The assumption is that some part of the public would make all of these retrospective, unlinked "associations," resting upon a "decades ago" predicate of support, about an unrelated person leading a small religious cult. Compl. ¶ 23.

Plaintiff is using Tony Alamo, who has nothing to do with the series, as a time machine to transport readers from 2003, when the character was created, back to 1994, in order to link the character Thomas Richards' violence to Tony Alamo, and then transfer "Back to the Future" to 2004 onwards via fictional 2004 violence to the non-fiction "Thomas a.k.a. Tommy" Richards to the present day. Plausibility is absent.

---

[2] Compl. ¶ 25.

Regarding (4): the pleading reveals itself to be only speculation.  Image Comics' business model is that the authors create, control, and own their own creations. Compl. ¶ 83.  There are no facts that plausibly support that Image created or helped to create the fictional "Thomas Richards."  Pleading that "*there have been cases*" unrelated to the series at issue here where Image allegedly helped to redesign a character, does not amount to plausible facts that Image Comics redesigned the Thomas Richards character at issue here.  *Speculation* does not meet the *Twombly/Iqbal* standard. *Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.")

## II.    THE PARTIES

### a.  Plaintiff Thomas Richards, "and sometimes 'Tommy' Richards"

Plaintiff Thomas Richards, a.k.a. "Tommy Richards" (Compl. ¶ 26), pleads that at times, off and on, that he has proselytized via the Internet in favor of his religious views.  He also criticized other religions.

### b.  Defendant Image Comics, Inc.

Image Comics, Inc. ("Image Comics" or "Image") is a comic book publisher with its principal place of business in Portland, Oregon. Compl. ¶ 14. Image published *The Walking Dead* comic book series from 2003 until 2019. *Id.* The series is now published by Robert Kirkman under his own imprint, Skybound Entertainment. *Id.*  Image does not own or control any of its co-defendants. *See id.* ¶ ¶ 12-17.

## III.   STATEMENT OF FACTS

### A.    1994: <u>Tony Alamo, Complete Stranger to this Case, Is Convicted of Tax Fraud</u>

Third-party Tony Alamo was an evangelical preacher.  He and the government disagreed as to whether his Arkansas religious community's businesses, which were profitable and

5

operated principally for his personal benefit, were charitable in nature or should be taxed. Tony
Alamo's tax crimes occurred "decades ago." Compl ¶ 23; Id. n.6 citing "Tony Alamo (1934-
2017), Encyclopedia of Arkansas.")

**B.    1999/2000: Thomas, "Sometimes Tommy" Richards, Begins Internet
Discussion *Fora* To Promote His Religious and Political Views**

Mr. Richards claims that he began promulgating his own views on politics and religion
via the Internet in "1999/2000." Compl. ¶ 20. He alleges that he "is a well-known religious
commentator..." Compl. ¶ 11. ("…Mr. Richards had achieved significant online visibility and
audience reach…"). Compl. ¶ 22. Despite this, Mr. Richards disclaims being a "public figure."
*Id*.

Plaintiff does not plead any direct evidence that Mr. Kirkman ever visited, saw, or was
aware of Mr. Richards's Internet postings. Plaintiff pleads only that "[u]pon information and
belief, that Kirkman was familiar with early social media platforms…" Compl. ¶ 36. And that *if*
he had known of Plaintiff's content, "that he *would* view Mr. Richards'" religious content with
"hostility." Compl. ¶ 32 (emphasis added).

**C.    October 2003-April 2004: Robert Kirkman, Author, Creates Fictional
"Thomas Richards" Character**

Robert "Kirkman is the creator of *The Walking Dead* comic book series...." Compl.
¶ 12. He created a fictional character with the name, "Thomas Richards." The character
appeared in seven consecutive issues in the series from October 2003 to April 2004. Compl. ¶ 4
("started in 2003"). The Richards comic book character was a minor one, omitted from the
subsequent TV series based on the comic book series. Compl. ¶ 61.

**D.    2009: <u>Plaintiff Disavows Alamo Shortly Before Alamo's Child-Sex Convictions</u>**

Plaintiff pleads that Plaintiff repudiated Tony Alamo no later than one day before Tony Alamo was convicted of "heinous sex crimes." Compl. ¶ 23 n.6. Plaintiff Richards pleads that he had a "documented prior association with Tony Alamo around 2003-2005." Compl. ¶ 43. Plaintiff does not plead that Tony Alamo was referenced by name or otherwise in any of Defendants' content. Plaintiff does not plead that Mr. Alamo, was ever accused of being a murderer, serial killer, or lied about his prior tax convictions.

**E.    <u>September 4, 2025: Thomas "Sometimes Tommy" Richards Sues Image Comics, Alleging That A Kirkman-Created Fictional Character's Falsely Telling Other Unrelated Fictional Convicts, In A Fictional Prison Setting, That The Fictional Thomas Richards Was Imprisoned For A Tax Crime, Evoked In The Public's Mind Thomas "Sometimes Tommy" Richards "Brief Support" of Tony Alamo Until 2009, Despite Alamo's 1994 Tax Convictions, Somehow Created An Unsavory Association In the Public's Mind Of Plaintiff, Because Of The Fictional "Thomas Richards" Violent Actions Depicted In The 2003-2004 Comic Book Series</u>**

Plaintiff pleads a theory of defamation against Defendants based upon his own "brief" (Compl. ¶ 87) support for the real-life tax felon, Tony Alamo. He pleads that the commonality of real-life tax felonies by Mr. Alamo, and the fictional character's lying that he was convicted of tax crimes, was "a deliberate connection" involving Plaintiff Thomas "Sometimes Tommy" Richards. He pleads the following: "This [fictional] character is portrayed as a depraved serial killer who falsely claims to be in prison for tax fraud to hide his true violent crimes – a deliberate connection to Mr. Richards' former association with convicted felon Tony Alamo, who was imprisoned for tax fraud." Compl. ¶ 45. Mr. Richards sued Image *22 years after* the "Thomas Richards" character was first published.

In this action against Image Comics, Plaintiff alleges damages due to Defendant Image Comics' publishing of comic books, and also for a "systematic censorship campaign that has

since suppressed his content across multiple platforms." Compl. ¶ 22. Plaintiff's footnote 5 references a competing YouTube channel started by the Vatican in 2009.

Against defendant Image Comics, Plaintiff pleads the following: "This demonstrates that [Plaintiff] Richards had achieved significant online visibility and audience reach before the systematic censorship campaign that has since suppressed his content against multiple platforms." Compl. ¶ 22. Damages are pleaded from 2004 to the present against Image Comics. Compl. at pg. 39.

**F.    Summary of Pleaded Chronology:**

| | |
|---|---|
| 1994 | Tony Alamo Convicted of Tax Crimes. Compl ¶ 23; Id. n.6 |
| 1990-2000 | Thomas "Sometimes Tommy" Richards Starts Posting on the Internet. Compl. ¶ 20. |
| 2004 | Fictional "Thomas Richards" Comic Book Character Created. Compl. ¶ 53. |
| 2009 | Tony Alamo Convicted of Sex Crimes With Minors Compl. ¶ 87 |
| 2009 | Thomas "Sometimes Tommy" Richards Repudiates Alamo Compl. ¶ 87. |
| September 2025 | Plaintiff Sues Image Comics, Inc. |

## IV.    LEGAL STANDARD

To avoid dismissal, the Complaint must survive scrutiny, in context, of whether the allegations are "plausible." The context here is in assessing a defamation claim. That is true whether Plaintiff is treated as a "public figure," or as an ordinary member of the public. His other claims rest upon the defamation claim's premise that he was identified in the public's mind via a third-party Tony Alamo (who does not appear in the comic book series) and a fictional Thomas Richards, and that it is somehow plausible that he, specifically, is the "Thomas Richards" among all real-life Thomas Richards.

A.    **The *Twombly/Iqbal* Pleading Standard Requires "Plausibility," Not Just Alleged "Possibilities," or "Speculation"**

To survive dismissal, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  The Supreme Court held that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (quoting *Twombly*, 550 U.S. at 570).  "[W]hether a complaint states a plausible claim for relief will…be a context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Here, the context is whether a fictional comic book character created "in or about 2004," named "Thomas Richards," who lied in the comic book series about why he was in prison, evoked a public association with "Thomas 'Sometimes Tommy' Richards." The link pleaded was that Plaintiffs had supported an unrelated party, Tony Alamo (not in the comic books), "decades ago" despite Alamo's tax convictions.

Plaintiff Richards must demonstrate that his Complaint is "plausible," and not just comprised of "possibilities."  A proper inquiry focuses upon whether "plausible" facts are alleged, and not just legal conclusions.  "An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a[n] [antitrust] complaint:…without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (in the antitrust case) (emphasis added).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain sufficient factual allegations to state a claim to relief that is "plausible on its face."

Dismissal is required, where here, assuming that even if all pleaded factual allegations are true and reasonable inferences drawn in favor of plaintiff, the plaintiff still has not stated a plausible claim for relief. *Fairfax v. CBS Corp.,* 2 F.4th 286 (4th Cir. 2021); *see also Edwards v.*

9

*Schwartz,* 378 F. Supp. 468 (W.D. Va. 2019) (dismissing defamation claim for failure to state a claim.)

A court must reject conclusory allegations of bad acts based upon presumed religious animus. The Fourth Circuit, following *Iqbal*, refused to assume the truth of conclusory allegations that city officials discriminated against plaintiffs on the basis of their race when the only pleaded facts were the plaintiffs were all of one race, the defendants were all of another, and defendants never initiated action against members of their own race. *Giacomelli*, 588 F.3d at 195. *See also Burgis v. N.Y. City Dep't of Sanitation,* 798 F.3d 63, 70 (2d Cir. 2015) (declining to assume the truth of the conclusory allegation that petitioners "'knew of, condoned, and willfully and maliciously agreed to subject [respondent]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin") citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680-681 (2009). Plaintiff Richards alleges that because he promotes his own Christian beliefs, and that Kirkman does not believe in a religion, that Kirkman must have somehow known of Plaintiff's belief, and decided to attack Plaintiff.

In the context of a defamation case, Plaintiff's Complaint must meet *Iqbal*'s requirement of factual pleading to show that it is plausible. In one defamation case, the complaint was deficient because it "fail[ed] to allege facts that make [the complaint] plausible." *Fairfax,* 2 F.4th at 293; *see also Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012) (dismissing defamation complaint for containing no factual assertions that lend plausibility to the claims.) There must be plausible facts to support the allegation to survive a motion to dismiss.

1.  **The *New York Times v Sullivan* "Actual Malice" Standard For Public Figures**

Plaintiff pleads that he "is a well-known religious commentator" with "significant online visibility and online reach." Compl. ¶ 11, 22. He claims that he is a renowned "Bible scholar,"

who once had the second largest number of followers of anti-Vatican views on YouTube.
Compl. ¶ 22. As a "public figure," he would have to plausibly plead "actual malice," later
proved by clear and convincing evidence. *Gertz v. Robert Welch, Inc.* 418 U.S. 323 (1974).

### (a) The *Schaecher* Standard of "Negligence" for Ordinary Members of the Public

Under the standard applied to private individuals, for Plaintiff to prevail, he must show
that all of the following elements were met:

    (i)        a false statement of fact was made by the defendant;

    (ii)       the statement was published (communicated to a third party);

    (iii)     the statement was "of and concerning" Plaintiff Richards;

    (iv)     the publication was negligently made; and

    (v)      the false statement caused damages or harm to reputation.

*See Schaecher v. Bouffault,* 772 S.E.2d 589, 594-599 (Va. 2015); *see also Gazette, Inc. v. Harris*,
325 S.E.2d 713, 725 (1985).

Virginia has adopted a negligence standard for private individuals claiming defamation.
*Gazette,* 325 S.E.2d at 725. The Supreme Court permits only actual damages, unless the state
applies a higher "actual malice" standard for recovery. *Gertz v. Robert Welch, Inc.* 418 U.S.
323 (1974). Strict liability may not pertain—some *mens rea* must be shown for defamation.
*Gazette, Inc.,* 325 S.E.2d at 725.

## V.  ARGUMENT

### A.  Plaintiff's Speculations Fail The *Twombly/Iqbal* "Plausibility" Requirement.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the twin U.S.
Supreme Court precedents of *Twombly* and *Iqbal*, Plaintiff's pleading must plead facts to be
"plausible." The pleading falls prey to the Aristotelian fallacy of *post hoc*, *ergo propter hoc*.

Just because Tommy Richards' YouTube and online viewership has noticeably declined, does not mean that Image Comics' publications caused that decline.  It is not even comprised of "possibilities."  As such, it must be dismissed with prejudice.

Plaintiff pleads that his opinions upon religion and politics were so impactful, that Mr. Kirkman somehow *must have* stumbled across them by "in or around 2004," when the fictional "Thomas Richards" was created.  Compl.  ¶ 53.[3]  Further, Plaintiff pleads that back in 2009 that he had the number two Internet website in the anti-Vatican commentary niche.  *Id.*  ¶ 22.  Surely, that pleaded prominence qualifies Plaintiff as a "public figure," meriting application of the *NY Times v. Sullivan*'s "actual malice" standard.  Plaintiff, however, hedges his bets, alleging wrongful intent on "information and belief."  He just does not plead facts sufficient to plausibly demonstrate negligence to sustain a defamation claim for a non-public figure.

He pleads for $25,000,000 in compensatory damages from 2003 to the present day against Image and its co-defendants.  These damages are contradicted by his pleading as follows: "his name, which he uses to freely share religious teachings and materials without charge." Compl. ¶ 24.  One cannot plausibly square a compensatory damages claim of $25,000,000 for damage to a free service and goods.

### 1.    Speculation #1 That Kirkman Must Have Known Of Plaintiff's Internet Content In 2000-2003 Is Implausible

Speculation (1) is unsupported by any facts that show that Kirkman knew of Richards. Instead, Richards pleads that because both he and Kirkman used the Internet, and posted content on the Internet, that Kirkman *must have somehow known* of Richards.  Compl. ¶ 39.

---

[3] There are no facts pled that the fictional character in the series has anything in common with Plaintiff other than a similar name and  they are both male.

Implausibly, and contrary to common sense, Richards pleads Kirkman's omniscience of the entire Internet, or at least anti-Vatican commentary, to Kirkman. *Id.* ¶¶ 3, 39.

On this false premise wholly without factual allegations or any reasonable inference, the Complaint should be dismissed. Without knowledge of Richards, then Kirkman could not have had "actual malice" required under a *New York Times v. Sullivan* standard necessary for defamation of "public figures." *Hatfill v. The New York Times Co.,* 416 F.3d 320 (4th Cir. 2005). There are no facts pleaded that "plausibly" support a conclusion of intentional defamation. Any claim of intentional defamation rests only upon speculation, and must be dismissed.

Neither are any facts pleaded to support that Image Comics should be charged with negligence because the author Kirkman, or Image Comics, should have known that the fictional character was somehow tied to Plaintiff via Tony Alamo. The reasoning is circular. 'We had differing views on religion, therefore he must have known of me, was hostile towards me, and defamed me.' Compl. ¶¶ 22, 34. Lacking plausibility, under *Twombly/Iqbal* the Complaint must be dismissed.

> **2. Speculation #2: Co-Defendant Kirkman Developed Animus Due To Plaintiff's Internet Content, And Decided To Injure Plaintiff, Contravenes *Twombly/Iqbal*, And The Pleading Of A Full-Name "Positive Character" Also Negates "Plausibility"**

> > **a. Intentional defamation from speculative religious animus is not permitted**.

Plaintiff must plead facts plausibly supporting a claim that Kirkman intended to defame Plaintiff. *Fairfax,* 2 F.4th at 293; *see also Burgis*, 798 F.3d 63, 70 (2d Cir. 2015). As in *Burgis*, Plaintiff pleads defamation spurred by religious "disagreement" and Plaintiff merely pleads a conclusory allegation of Defendant Kirkman's "***apparent*** disagreement with Mr. Richards'

religious belief and content." Compl. ¶ 3 (emphasis added). "Apparent" is presumed, and barred

by *Burgis*. *See Burgis*, 798 F.3dat 69. Plaintiff pleads the following:

> "*Upon information and belief*, Defendant Kirkman intentionally named this
> fictional villain after Mr. Richards to damage his reputation, based on an extremely
> detailed analysis of Kirkman's established pattern of naming villainous characters
> after real people he dislikes and his ***apparent disagreement*** with Mr. Richards'
> religious beliefs and content, followed by an array of telling details explained below
> which make it ***highly likely*** that defendant was naming his character after Mr.
> Richards and ***hoping*** others would recognize this intent." (emphasis added). *Id.*

No deference is given to pleading on "information and belief." *Kashdan v. George*

*Mason University,* 70 F.4th 694, 701 (4th Cir. 2023) ("While a plaintiff may plead parts of his

case 'upon information and belief,' his allegations may not be wholly conclusory."); *see also*

*Stone v. Trump,* 400 F.Supp.3d 317, 341 (D. Md. 2019) (explaining that "using 'upon

information and belief' as a pleading device survives a motion to dismiss only where 'the facts

are peculiarly within the possession of the defendant, or where the belief is based on factual

information that makes the inference of culpability plausible.") Plaintiff pleads no facts that

plausibly support culpability or the speculation that Kirkman knew of Plaintiff or Plaintiff's

religious beliefs. Without such knowledge, Kirkman could not have decided "to damage his

reputation." Instead, Plaintiff infers the conclusion that he needs to proceed with the case. The

*Burgis* holding analogously applies, and the Complaint must be dismissed.

        **b.**    **Plaintiff's pleading contradicts itself- with only two characters
identified as based upon real-life people, one of them a
"positive character" depicted favorably, and the other a
"negative character," making the premise "implausible."**

Plaintiff's Complaint does not give a single example of Mr. Kirkman's naming of a

character with both a first and last name that was motivated by animus. To the contrary, the

single example given rebuts Plaintiff's claim. He pleads that "Earl Sutton" is "a positive

character." Compl. ¶ 48. And then Plaintiff pleads himself as the only "negative character"

example with a first and last name. Compl. ¶¶ 47-48, 72. This is circular pleading, and

implausible. Plaintiff disjointedly ties those two unrelated characters, "Earl Sutton," with a full

name, and a character allegedly based upon a villainous "Phillip," allegedly without a fictional

first and last name. Plaintiff pleads that Kirkman based these two characters unrelated to this

series, who Kirkman stated publicly that he personally knew, and then makes the implausible and

speculative claim that the fictional character Thomas Richards is therefore based on him.

### 3. Speculation #3: It Is Implausible That Members Of The Public Would Associate Plaintiff Thomas Richards With A Fictional Violent Character Because The Character, In A Story, Lied About Why He Was Imprisoned, And That Would Call To Mind The Real-Life Plaintiff, Because Plaintiff Supported An Unrelated Third Party With Tax Felonies From Two Decades Earlier

Both the unrelatedness of Mr. Alamo to the content, and the chronology of pleaded facts,

destroy plausibility. Mr. Alamo is the alleged hypothetical link in the public minds between the

fictional Thomas Richards and the real Thomas "sometimes Tommy" Richards. Why? There is

no explanation. There are no facts pleaded in support of the alleged "association," making it

implausible.

It is untenable that Mr. Alamo, who was not, and is not pleaded to have been in the series,

to be the basis of a tacit third-party based "association" giving rise to a claim. There are no

commonalities. "This fictional Thomas Richards character is portrayed as a psychopathic serial

killer who lies about being imprisoned for tax fraud to conceal his true violent nature."

Compl. ¶ 54. As pleaded, the chronology depends upon the public remembering that Mr.

Alamo, convicted in 1994, or "decades ago" (Compl. ¶ 23) for not paying taxes, would associate

Mr. Alamo with the fictional Thomas Richards created "in or around 2004." [4]  *Id*. ¶ 53.

---

[4] Compl. ¶ 2: "This character is portrayed as a depraved serial killer who falsely claims to be in
prison for tax fraud to hide his true violent crimes – a deliberate connection to Mr. Richards'

Plaintiff pleads that he loyally supported Tony Alamo until July 23, 2009. Compl. ¶ 23 n.6. Mr. Alamo was convicted of many sex crimes with minors shortly thereafter. *Id.* Plaintiff understandably regrets his longstanding support of Mr. Alamo.  But the creation of the fictional Thomas Richards several years earlier, "in or around 2004," had nothing to do with Plaintiff's continuing support of Mr. Alamo until 2009.  Tommy Richards' regret over supporting Tony Alamo does not plausibly plead damages caused by Image Comics.  Demanding damages and a permanent injunction in 2025, to cease Tommy Richards' regret is a *non sequitur*, and therefore, "implausible" under *Twombly/Iqbal*

4.    **Speculation #4:  Pleading That Because There Have Been Cases
Where "We've [Image Comics] Designed Logos And Helped Redesign
Characters" Does Not Plausibly Support That Image Comics
Redesigned The Thomas Richards Character**

Plaintiff's pleading of a mere "possibility" does not satisfy the *Twombly/Iqbal* standard. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The pleading "'[t]here have been cases where  [Image Comics] designed logos and helped redesign characters'"[5] suggests, at most, a "possibility."  "[W]ithout some further factual enhancement it stops short of the line between *possibility* and *plausibility* of 'entitlement to relief.'"  *Twombly*, 550 U.S. at 557 (in the antitrust case) (emphasis added). There are no facts pleaded that show that Image Comics redesigned the fictional Thomas Richards.  And without facts, there is only speculation, which *Twombly/Iqbal* precludes.

---

former association with convicted felon Tony Alamo, who was imprisoned for tax fraud."

[5] Compl. ¶ 83.

**B.**    **The New York Times v Sullivan "Actual Malice" Standard Should Apply, Given Plaintiff's Allegations That He Is "Well Known" With "Significant Online Visibility And Audience Reach"**

Applying *Gertz*, Tommy Richards is a public figure. He pleads that he is "a well-known religious commentator." Compl. ¶ 11. He pleads that he had achieved "significant online visibility and audience reach…". *Id.* ¶ 22. He pleads that he was so prominent on the significant question of Catholic teachings and church handling of sexual abuse of minors, that he was the subject of a "systemic censorship campaign" to suppress his Internet commentary. Compl. ¶ 22 n 5. Despite pleading that he had achieved the second largest anti-Vatican YouTube following, he tries to meet the *Gertz* standard that he "had achieved no general fame or notoriety in the community." *Id.*

Plaintiff characterizes all of that as lacking "special prominence in the resolution of public questions," which he admits would make him a "public figure." Compl. ¶ 25. Under his pleading, he is a "public figure" in implying that Image Comics was somehow involved in a "systematic censorship campaign that has since suppressed his content across multiple platforms." Compl. ¶ 22. Logically, it is inconsistent for Plaintiff to plead that he was so well known that Mr. Kirkman must have been aware of Plaintiff's content, but simultaneously that he was not a "public figure."

The allegation requires Image Comics to prove a negative, *i.e.*, that co-defendant Kirkman did not search for, and find, Mr. Richards on the Internet. On his pleading, the public figure question, viewed with reference to Plaintiff Richards' criticism of the Vatican's teachings and actions, and Richards' previous number two ranking of YouTube followers on those controversies, is resolved against him. His pleading of a "systematic censorship campaign" by Image Comics, and demands "technical measures" by Image to stop that "suppression." Under

17

*NY Times v. Sullivan*, he therefore must show "actual malice" by a "clear and convincing" standard, with the burden upon him to show facts plausible enough to clear that high bar.

"*Upon information and belief*, Defendant Kirkman intentionally named this fictional villain after Mr. Richards to damage his reputation and his apparent disagreement with Mr. Richards' religious beliefs and content…" Compl. ¶ 3 (emphasis added). As to Mr. Kirkman's apparent disagreement with Mr. Richards' religious beliefs and content, there are no facts pleaded that Mr. Kirkman ever knew of Mr. Richards until the latter sued him. The case is entirely built upon a presupposition that they both used the Internet in the early 2000s. *Id.* ¶ 20, 21, 34.[6] Upon that supposition is stacked the implied premise that Mr. Kirkman omnisciently was aware—without any evidence whatsoever—of all content on the Internet. This 'he used the Internet, I posted on the Internet, we both were anti-Catholic, so he must have known of me, disliked me, and decided to damage me' is wild speculation.

Unlike Mr. Gertz, Mr. Richards effectively pleads that he has "thrust himself into the vortex of [the] public issue" of the Vatican regarding "sexual abuse of children" and "false doctrine." Compl. ¶ 21. In Plaintiff's pleading of a censorship campaign by Image Comics, no link is pleaded between the Vatican and Image Comics, or between Google or anyone else and Image Comics. Without showing some plausible causation link, Image Comics cannot plausibly be alleged to be involved in some unstated third-party conspiracy.

C.    <u>**Even Under The Lower Standard Of "Negligence," For A Private Figure "Unconscious Link[ing]" And "Involuntary Association" Between The**</u>

---

[6] "[Co-D]efendant Kirkman was actively engaged with Internet culture during the early 2000s…"

**Fictional Thomas Richards And Plaintiff Does Not Plausibly Show Some
Intent Required By Gertz v. Robert Welch, Inc.**

Plaintiff's pleading demonstrates that he seeks to impose strict liability, barred by U.S.

Supreme Court precedent, as  evidenced by Plaintiff's speculative and factually unsupported

claims of:

(a) Kirkman's admitted pattern of naming villainous characters after real people he

dislikes;

(b) the statistically improbably combination of Plaintiff's exact name with support of a

third party (not in the series) that at some point was associated with tax fraud. Compl. ¶ 95.

As noted above, the Complaint pleads only one example of naming a villainous character

(Compl. ¶¶ 53-54), not a "pattern."  *Id.* ¶ 69. "Thomas," "Tommy" and "Richards" are arguably

common names.  *The "tax fraud connection" is alleged via a third party Tony Alamo, who had

nothing whatsoever to do with the series*.  On the face of the pleading, there are no facts to

plausibly support Mr. Kirkman was referring to Plaintiff.

Plaintiff's pleading contravenes the required first, third, fourth, and fifth *Schaecher*

elements of pleading facts, "of and concerning" Plaintiff."  *Schaecher*, 772 S.E.2d at 598.

Plaintiff pleads that Image Comics' content:

> "operates as a form of psychological conditioning, where Mr. Richards name
> becomes unconsciously linked with repulsive content with repulsive content in the
> minds of those who encounter these search results.  Even individuals who
> rationally understand the fictional nature of the character experience this
> involuntary association when they see or hear Mr. Richards' name."

Compl. ¶ 76.

The "fictional nature of the character" definitionally does not include "facts."  Similarly,

since the pleading correctly adverts to "the fictional nature of the character," it is not "of or

concerning" plaintiff.  "Unconscious link[ing]" and an "involuntary association" do not meet the

required elements of *Schaecher*, and therefore the defamation claim, upon which all claims rest, must be dismissed. *Schaecher*, 772 S.E.2d at 594-599, 602.

**D.** **Plaintiff Pleads That Image Comics First Published The Character "In Or About 2004," And Continued To Until 2019, Making The Alleged Defamation Barred By Virginia's One-Year Statute Of Limitation For Defamation**

Plaintiff's claim is barred by the statute of limitations. Virginia has a one-year statute of limitations, beginning from the initial publication as the one-year deadline for any claims related to it. *See* Va. Code § 8.01-247.1 ("Limitation on action for defamation, etc."). The statute states the following: "Every action for injury resulting from libel, slander, insulting words, or defamation shall be brought *within one year* after the cause of action accrues." *See* Va. Code § 8.01-247.1 (emphasis added).

Under the single publication rule "any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication." *See Myska v. RMS Technologies, Inc.,* 25 Va. Cir. 344, 1991 WL 835248, at *2 (Fairfax Cir. Ct., Oct. 21, 1991) (quoting Restatement (Second) of Torts § 577A(3)). The single publication rule protects "defendants and the courts from the numerous suits that might be brought for the same words if each person reached by such a large-scale communication could serve as the foundation for a new action." Yet, that is exactly what Plaintiff pleads:

> "Image Comics originally published "The Walking Dead" comic book series from 2003 to 2019, but the series is now published by Skybound Entertainment, Robert Kirkman's imprint that operates under Image Comics."

Compl. ¶ 14.

Plaintiff pleads that the "Thomas Richards" character was created "in or about 2004," "who appeared in "The Walking Dead" comic book series published by Image Comics. *Id.* ¶ 53.

The filing of the Complaint is well past the 2004-2019 alleged original publication dates.
Plaintiff pleads that "[t]he character appears to be actively maintained across multiple digital
platforms through 2025." But the single publication rule bars continuing claims based on a 2004
publication. Consequently, Plaintiff's Complaint is barred by the statute of limitations, and must
be dismissed pursuant to Virginia Code § 8.01-247.1, and *Myska*.

### E.    The Right Of Publicity Claim Also Fails Because There are No Facts That Plausibly Support Any Defendant Used Plaintiff's Name And Regardless, Any Claim is Barred by the Statute of Limitations.

For all of the reasons listed above, it is implausible that the real-life "Thomas 'sometimes
Tommy' Richards," was used or referred to in the fictional character. The fictional character is
not "a religious commentator, Bible scholar, artist, and content creator focused on the Bible and
historical research." Compl. ¶ 18. Nor did the fictional character experience a "vision (and a
dream) of Jesus when he was young, unlike the real-life Plaintiff. Compl. ¶ 28. Instead, the
fictional character is a "psychopathic serial killer who brutally murders multiple people[,]"
including minors[,]" who "lies about being imprisoned for tax fraud[,]" "exhibits sadistic and
depraved behavior. Compl. ¶¶ 53-55. Notably, Plaintiff Richards does not allege he shares any of
these traits with fictional Richards.

Even if Plaintiff could allege facts that any Defendant used his likeness—which he has
not and cannot—his claim still fails due to the expired statute of limitations. For a claim under
Virginia Code § 8.01-40 (Count II), the statute of limitations is five years. *Moore v. Nat'l
Collegiate Athletic Ass'n,* No. 121-cv-01447, 2022 WL 2306761, at *2 (E.D. Va. June 27, 2022).

Therefore, for Plaintiff's appropriation claim to be timely, it would need to have arisen on
or after September 24, 2020. Despite this, Plaintiff alleges his claim arose *over 20 years ago*,
when Defendant Image Comics originally published the fictional character Thomas Richards in

*The Walking Dead.* Compl. ¶ 14. Even if a later publication of the character gave rise to Plaintiff's claim, Plaintiff alleges Defendant Image Comics ceased publishing *The Walking Dead* in 2019—a year past the limitations date. Compl. ¶ 53.

Any further publication of *The Walking Dead* cannot resurrect Plaintiff's expired statute of limitations as not only as Plaintiff does not allege any connection between any later publications and Defendant Image Comics but because the single publication rule also applies to Plaintiff's claim. The single publication rule states that "only one cause of action [can] be maintained for any single publication." *Lokhova v. Halper,* 441 F.Supp. 3d 238, 253-54 (E.D. Va. 2020) (citation omitted), *aff'd*, 995 F.3d 134 (4th Cir. 2021). The single publication rule applies to defamatory "'[f]orms of mass communication or aggregate publication,'" *id.* at 253 (citation omitted), and instructs that "[s]ubsequent distribution of a defamatory statement…does not create independent actions or start the statute of limitations running anew," *Katz v. Odin, Feldman & Pittleman, P.C.,* 332 F. Supp. 2d 909, 918 (E.D. Va. 2004) (citation omitted).

### F.    The Unfair Competition Claim Fails For the Same Reasons That The Defamation And Statutory Right of Publicity Claims Fail

Plaintiff pleads "unfair competition" to try to evade restrictions upon a trademark-based-claim, which bar that claim:

### 1.    "Secondary meaning" is a heightened standard of consumer association with a trademark as a source of goods, applicable only in trademark law.

A prerequisite for trademark law is use of a source-identifying term or logo in inter-state (federal) or intra-state commerce. Moreover, there is no pleading of extensive advertising that would qualify as "secondary meaning" that would associate Plaintiff's name as a trademark (source identifier) in the minds of consumers.

**2.      Image Comics did not sell goods as authored by Plaintiff.**

Plaintiff does not plead any facts to support "palming off," i.e., the sale of goods or

services by Image Comics that are labeled as authored by Thomas Richards, or sold under that

name.  Instead, the pleading of "misappropriating Plaintiff's established identity

and…unauthorized use of his identical name" Compl. ¶ 113 is the same as the right of publicity

claim, and fails for the same reasons.  Putting a different conclusory label does not survive

*Twombly/Iqbal* scrutiny.  "a plaintiff's obligation to provide the ''grounds'' of his ''entitle[ment]

to relief' requires more than labels and conclusions…" *Twombly*, 550 U.S. at 555.

**3.      No confusion**.

Plaintiff's pleading is that there is "confusion regarding the source, origin, or sponsorship

bearing that name."  Compl. ¶ 114.  This is belied by Plaintiff's pleading that he has a

"dedicated" following.  It is completely implausible that his stated ministry would be confused

with a work of fiction, set in a pleaded God-less dystopian setting.  Further, Plaintiff has not pled

any facts to support that his name acts as a trademark, that he has exclusive rights in any alleged

trademark, or that there is a likelihood of confusion by use of a similar name for a fictional

character in a comic book (which is not trademark use).

**4.      There are no facts to support a dilution claim**.

As to a federal trademark dilution claim, Plaintiff's pleading is contrary to the required

elements of (a) use "in commerce," and (b) as a "famous trademark." 15 U.S.C. § 1125(c)

(Section 43(c) of the Lanham Act).   As set forth above, Plaintiff has not pled any facts to

support that he has a trademark that is used in commerce to identify Plaintiff as the source of any

specific goods or services.  And no facts to support that such trademark is so "famous" that it

would be subject to a dilution claim.

All of the foregoing reasons regarding lack of plausibility apply here as well.

**There were no deceptive practices**. Plaintiff pleads on "information and belief" that the series' author "intended" to harm Plaintiff. After decades of selling the series' comic books, one would expect, in a 40 page Complaint, a single instance of a consumer being deceived. Not a single fact is pleaded to support this conclusion or any reasonable inference.

### G.     Equity Aids The Vigilant; Not Those Who Sleep On Their Rights For 22 Years

Plaintiff's 22-year delay in seeking an injunction bars relief. "Simply stated, equity aids the vigilant, not those who sleep on their rights." *Zero Mfg., Inc. v. EDAK, Inc*., No. 6:13-CV-852-ORL-31, 2013 WL 2432208, at *2 (M.D. Fla. June 4, 2013) (citing, e.g., *Atlanta & St. A.B. Ry. Co. v. Barnes,* 95 F.2d 273, 278 (5th Cir.1938)). Here, Plaintiff pleads that the fictional comic book character was created "in or around 2004." Compl. ¶ 53. Plaintiff waited six years until 2009, when "censorship" of his views allegedly began. He then waited through an alleged 16 years of suppression, for a total of 22 years before suing. Plaintiff lacks any reasonable basis to overcome the requirement of vigilance to demand that this Court use its extraordinary equitable powers to enjoin defendants now, after waiting for 22 years to seek relief. No injunction should issue.

#### 1.     The demand that the fictional character repent of his bad acts violates the First Amendment Protection Of Religious Belief

Plaintiff improperly seeks an extraordinary mandatory permanent injunction well beyond the Court's judicial authority, to enlist it in rewriting "wholesome story lines." Compl. at 37 Prayer, Section B. Injunctive Relief (Defendants' Choice):

> *"OPTION 1 – CHARACTER REDEMPTION: Defendants shall issue a public apology within 30 days of this Court's order AND publish storylines within three months showing the Thomas Richards character's complete moral transformation, redemption, and evolution into a heroic figure who actively works to protect others and demonstrates*

*genuine remorse for past actions, thereby actively counteracting the negative associations created with Plaintiff's name, OR…" Id.*

Plaintiff demands that Defendant Image Comics effectively adopt Plaintiff's faith as a corporate policy.  Plaintiff tries to coerce those who publish works that he finds offensive, to "choose" to publish new and approved material.  That he seeks the right to apply it to publications 22 years after the fact, is completely Orwellian.  "Who controls the past controls the future: who controls the present controls the past."  Orwell, George.  *Nineteen Eighty-Four.* Harcourt Brace & Company, 1949, Part I, Chapter 3 and Part III, Chapter 2 (quoted twice in the book).  That is certainly heavy artillery deployed against decades-old comic books.

The relief sought by the Plaintiff would violate the First Amendment, as it would be enforced by the Court.  The First Amendment to the U.S. Constitution states the following: "Congress shall make no law respecting an establishment of religion…"  While the text refers to Congress, the U.S. Supreme Court has extended its protections to extend to federal courts.

Plaintiff's demand to apply real-life moral standards to a reprobate fictional character's fictional sins committed in a fictional 2004 world, is beyond the scope of the government's permissible powers.  *Twombly/Iqbal* is restricted to the domain of facts, and fiction definitionally is not factual.  The Prayer therefore is "implausible," and must be dismissed.

      **2.**      <u>**Demanding mandatory injunctive relief is precluded because it is beyond the Court's judicial competencies to oversee the rewriting of a fictional character as well as to oversee "search engine optimization techniques" and technical measures.**</u>

            **a.**      **It is beyond the Court's competency to oversee multiple technical measures, aimed really at Google, and which a comic book publisher cannot implement.**

Plaintiff pleads, in Section C of the "MANDATORY REQUIREMENTS" the following be implemented:

- "search engine optimization techniques"

- "implementation of technical measures…including proper metadata

implementation, search engine directives…" Compl. at 38.

Frustrated over his current low level of display in Google's search-result rankings, Mr.
Richards has sued Image *22 years after* the "Thomas Richards" character was first published.
There are no facts pled that Image controls Google, and could change those search results. "This
widespread presence online presence damages Plaintiff's ability to share his religious message."
Compl. ¶ 58. Plaintiff complains that Defendants' creation of the [fictional] villainous character
[] effectively suppress[es] his ability to reach his intended audience." *Id.* In other words,
Plaintiff would have the Court ensure that Plaintiff was the permanent search-results winner.

Plaintiff complains of "search result contamination" (Comp. ¶ 96), which is a demand
that his views are the only ones acceptable for the public to see. By controlling Internet "search
results," Plaintiff effectively demands, ironically, to create his own modern private *Index
Librorum Prohibitorum* of banned books. The remedies sought would burden non-creator
Image Comics to create content acceptable to Plaintiff and requests relief beyond the Court's
writ and competencies, upon which would place a heavy ongoing burden to create and
implement compliance.

 This prayer should be dismissed.

Finally, Image Comics incorporates by reference the legal authorities and arguments
made in the Motion to Dismiss filed by Robert Kirkman, Skybound, LLC, and Scopely, Inc. For
the additional reasons articulated in co-defendants' Motion to Dismiss, the Complaint and
prayers for relief should be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, Image Comics respectfully requests that the Complaint be

dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.


Dated:  November 3, 2025                    Respectfully submitted,

                                            **BAKER & HOSTETLER LLP**


                                            */s/Brian V. Johnson*
                                            Brian V. Johnson (VSB No. 93586)
                                            Susan M. Kayser (VSB No. 36977)
                                            (W.D. Va. admission pending)
                                            BAKER & HOSTETLER LLP
                                            Washington Square, Suite 1100
                                            1050 Connecticut Avenue, N.W.
                                            Washington, D.C. 20036
                                            (202) 861-1500
                                            (202) 861-1783 (Facsimile)
                                            bvjohnson@bakerlaw.com
                                            skayser@bakerlaw.com

                                            Scott Feldmann (*pro hac vice*)
                                            BAKER & HOSTETLER LLP
                                            600 Anton Boulevard, Suite 900
                                            Costa Mesa, CA 92626
                                            (714) 966-8862
                                            sfeldmann@bakerlaw.com

                                            *Counsel for Defendant Image Comics, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on November 3, 2025, a true and correct copy of the foregoing shall be caused to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Lisa Weingarten Richards, Esq.
LWR Law Offices
3060 Williams Drive, Suite 300, #510
Fairfax, Virginia 22031
(202) 981-2059
lwr@lwrlawoffices.com

Patrick John Curran , Jr.
Nimra H. Azmi
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
(202) 973-4200
patcurran@dwt.com
nimraazmi@dwt.com

Joshua F P Long
Woods Rogers Vandeventer Black
Wells Fargo Tower
10 South Jefferson Street, Suite 1800
Roanoke, VA 24011
(540) 983-7725
josh.long@woodsrogers.com

*/s/Brian V. Johnson*
Brian V. Johnson (VSB No. 93586)